NO ORAL ARGUMENT SCHEDULED

No. 13-7114

IN THE UNITED STATES COURT OF APPEALS FOR
THE DISTRICT OF COLUMBIA CIRCUIT

BOARD OF COUNTY COMMISSIONERS OF KAY COUNTY,
OKLAHOMA,
Plaintiff-Appellant,

v.

FEDERAL HOUSING FINANCE AGENCY, as Conservator for Federal
National Mortgage Association and Federal Home Loan Mortgage
Corporation, *et al.*,
Defendants-Appellees.

_____

On Appeal from the United States District Court
for the District of Columbia

_____

**JOINT BRIEF OF APPELLEES**

_____

Howard N. Cayne
Asim Varma
Michael A.F. Johnson
Dirk C. Phillips
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004
(202) 942-5000
Michael.Johnson@aporter.com

*Counsel for Appellee*
*Federal Housing Finance Agency*

(additional counsel listed on inside of
cover page)

Michael J. Ciatti
Merritt E. McAlister
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 737-0500
mciatti@kslaw.com

*Counsel for Appellee*
*Federal Home Loan Mortgage Corporation*


Michael D. Leffel
FOLEY & LARDNER LLP
150 East Gilman Street
Suite 5000
Madison, WI  53703
(608) 258-4216
mleffel@foley.com

Jill L. Nicholson
FOLEY & LARDNER LLP
321 North Clark Street,
Suite 2800
Chicago, IL  60654
(312) 832-4500
jnicholson@foley.com

*Counsel for Appellee*
*Federal National Mortgage Association*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28, Appellees Federal National Mortgage Association ("Fannie Mae"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), and Federal Housing Finance Agency ("FHFA") in its capacity as Conservator of Fannie Mae and Freddie Mac, state as follows:

**A.      Parties and Amici**

Except for the following, all parties, intervenors, and amici appearing before the district court and in this court are listed in the Brief filed by the Appellant:

The United States of America has moved to intervene as an appellee in this case.

Fannie Mae is a government-sponsored enterprise chartered by Congress to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716. Fannie Mae has no parent corporation. It is a publicly traded company, but no single publicly held corporation owns 10% or more of Fannie Mae's stock.

Freddie Mac is a government-sponsored enterprise chartered by Congress "to promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1451 note. Freddie Mac has no parent corporation. It is a publicly traded company and no publicly held corporation owns 10% or more of Freddie Mac.

As an independent federal agency, FHFA is not required to file a corporate disclosure statement under Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1.

## B.    Rulings Under Review

References to the ruling at issue appear in the Brief for Appellant. The Opinion associated with that Order is available at *Bd. of Cnty. Comm'rs of Kay Cnty. v. FHFA*, No. cv-12-1283, --- F. Supp. 2d ---, 2013 WL 3841503 (D.D.C. July 26, 2013). The Opinion and order can be found in Appellants' Appendix ("Kay App'x") at 32-42.

## C.    Related Cases

This case has not previously been before this or any other Court besides the district court.

Appellees know of no "related cases," as that term is defined by this Court's rules, pending in other federal appellate courts or in District of Columbia courts. *See* D.C. Cir. Rule 28(C) (defining "related cases" to include "any case involving substantially the same parties *and* the same or similar issues") (emphasis added). That said, there are numerous cases pending in courts around the country involving similar allegations that the statutory tax exemptions granted by Congress to Fannie Mae, Freddie Mac, and FHFA do not cover state and local taxes similar to those at issue here. Although these cases involve some of "the same or similar issues" as this case, they do not involve "substantially the same parties" because the plaintiffs are different in each case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF AUTHORITIES ................................................................................. v

STATEMENT REGARDING ORAL ARGUMENT ..................................... xiv

INTRODUCTION ............................................................................................... 1

JURISDICTIONAL STATEMENT ................................................................... 2

STATEMENT OF THE ISSUES........................................................................ 2

STATUTES AND REGULATIONS.................................................................. 3

STATEMENT OF THE CASE........................................................................... 4

I.      Statutory and Factual Background ...................................................... 4

II.     Procedural History .............................................................................. 6

III.    Other Litigation Raising Similar Questions ....................................... 6

STANDARD OF REVIEW ............................................................................... 7

SUMMARY OF ARGUMENT ......................................................................... 7

ARGUMENT ..................................................................................................... 9

I.      DEFENDANTS' STATUTORY ARGUMENTS FAIL................................. 9

        A.      Defendants' Exemptions from "All Taxation" Protect Them
                from Liability for *All* Forms of Tax ....................................... 9

                1.      The Plain Meaning of the Federal Statutes Exempting
                        Defendants from "All [State and Local] Taxation" is
                        Dispositive ................................................................. 10

                        a.      "All Taxation" Means All Taxation .............. 12

                        b.      Any Other Definition of "All Taxation" Would
                                Lead to Absurd Results................................... 13

                2.      The Supreme Court's *Bismarck* Decision Controls Here ........ 14

                3.      *Wells Fargo* Is Inapposite ...................................... 18

                4.      Sound Policy Principles Support the Distinction between
                        Entity Exemptions and Property Exemptions.......................... 21

B.    The Property Tax Carve-Out Does Not Permit Transfer Taxes ................................................................. 21

II.    PLAINTIFF'S CONSTITUTIONAL ARGUMENTS FAIL ........................ 27

A.    Plaintiff's Principal Constitutional Arguments Are Not Properly before this Court ................................ 28

B.    Under the Supremacy Clause, the Exemption Provisions Supersede State Tax Power ................................ 30

C.    Congress Properly Exercised Its Commerce Clause Power in Enacting the Exemption Provisions ................. 38

D.    The Enterprises Are Federal Instrumentalities for Purposes of Constitutional Immunity from State Taxation ............ 47

CONCLUSION ........................................................................... 51

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aloha Airlines, Inc. v. Dir. of Taxation of Haw.*,
   464 U.S. 7 (1983) ................................................................32

*Ariz. Dep't of Revenue v. Blaze Constr. Co.*,
   526 U.S. 32 (1999) ..............................................................33

*Arizona v. United States*,
   132 S. Ct. 2492 (2012) .........................................................35

*Athens-Clarke Cnty. Unified Gov't ex rel. Denson v. FHFA*,
   945 F. Supp. 2d 1401 (M.D. Ga. 2013) ...........................11, 23, 28, 43

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
   517 U.S. 25 (1996) ..............................................................34

*Bd. of Comm'rs of Montgomery Cnty. v. FHFA*,
   No. 3:12-cv-216, 2013 WL 5755420
   (S.D. Ohio Oct. 23, 2013) .......................... 11, 28, 39, 40, 43, 44, 46

*Bd. of Cnty. Comm'rs of Kay Cnty. v. FHFA*,
   No. cv-12-1283, --- F. Supp. 2d ---, 2013 WL 3841503
   (D.D.C. July 26, 2013) ......................... 5, 6, 11, 15, 20, 23, 26, 28, 47

\* *Brown v. Maryland*,
   25 U.S. (12 Wheat.) 419 (1827) ...............................................30, 31

*Bromley v. McCaughn*,
   280 U.S. 124 (1929) .............................................................17

*Butts v. Fannie Mae*,
   No. 9:12-cv-1912 (D.S.C. May 23, 2013) .......................11, 23, 28, 43

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
   520 U.S. 564 (1997) .............................................................41

\* Authorities upon which Defendants chiefly rely are marked with asterisks.

*Cape May Cnty. v. Fannie Mae*,
No. 12-cv-4712 (D.N.J. Apr. 30, 2013)..................................................11, 22, 28

*Carson v. Roane-Anderson Co.*,
342 U.S. 232 (1952)..........................................................................................33, 34

*City of Providence v. Fannie Mae*,
No. 12-481L, --- F. Supp. 2d --,
2013 WL 3816429 (D.R.I. July 24, 2013)........................... 11, 17, 19, 29, 23, 28

*City of Spokane v. Fannie Mae*,
No. cv-13-0020, 2013 WL 3288413
(E.D. Wash. June 29, 2013)........................................................11, 23, 28, 36, 43

*Commodities Exp. Co. v. Detroit Int'l Bridge Co.*,
695 F.3d 518 (6th Cir. 2012) ............................................................................48

*Comm'rs of Bristol Cnty. v. Fannie Mae*,
No. 12-cv-11525, 2013 WL 4095021 (D. Mass. Aug. 9, 2013)..11, 23, 28, 36, 43

*Conn. Nat. Bank v. Germain*,
503 U.S. 249 (1992)............................................................................................13

* *Cnty. of Oakland v. FHFA*,
716 F.3d 935 (6th Cir. 2013) ............................ 10, 11, 13, 14, 15, 19, 20, 22, 36

*CSX Transp., Inc. v. Ala. Dep't of Revenue*,
131 S. Ct. 1101 (2011)........................................................................................16

*CSX Transp., Inc. v. Ga. State Bd. of Equalization*,
552 U.S. 9 (2007)................................................................................................35

* *Deer Park Indep. School Dist. v. Harris Cnty. Appraisal Dist.*,
132 F.3d 1095 (5th Cir. 1998) ....................................................................38, 39

* *DeKalb Cnty. v. FHFA*,
Nos. 13-1558, -1559, -1611, -2739, --- F.3d ---, 2013 WL 6727323
(7th Cir. Dec. 23, 2013) ................................... 13, 14, 15, 16, 19, 20, 22, 23, 24,
28, 30, 36, 38, 40, 43, 46, 48, 50

*DeKalb Cnty., Ga. v. FHFA*,
No. 12-cv-2470, 2013 WL 4670534 (N.D. Ga. Aug. 30, 2013)..................11, 23

*DeKalb Cnty. v. FHFA,*
   No. 3:12-cv-50227 (N.D. Ill. Feb. 14, 2013)......................................................11

*Delaware Cnty. v. FHFA,*
   No. 2:12-cv-4554, 2013 WL 1234221 (E.D. Pa. Mar. 26, 2013)...........10, 22, 36

*Dep't of Emp't v. United States,*
   385 U.S. 355 (1966)......................................................................................48

\* *Dep't of Revenue of Or. v. ACF Indus., Inc.,*
   510 U.S. 332 (1994)..................................................................................34, 35

*Doggett v. FHFA,*
   No. 2:12-cv-553, 2013 WL 2920388 (M.D. Fla. June 13, 2013)................11, 23

*Dodd v. United States,*
   545 U.S. 353 (2005)......................................................................................10

*Emory v. United Air Lines, Inc.,*
   720 F.3d 915 (D.C. Cir. 2013)........................................................................7

*Exxon Corp. v. Hunt,*
   475 U.S. 355 (1986)......................................................................................32

*F.A.A. v. Cooper,*
   132 S. Ct. 1441 (2012)..................................................................................14

*Fannie Mae v. Hamer,*
   No. 3:12-cv-50230, 2013 WL 591979 (N.D. Ill. Feb. 13, 2013) .....................10

\* *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.,*
   314 U.S. 95 (1941)....................................................................14, 15, 16, 17, 20

\* *First Agric. Nat'l Bank v. Tax Comm'n,*
   392 U.S. 339 (1968)..................................................................................33, 47

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.,*
   554 U.S. 33 (2008)......................................................................................37

*Floyd Cnty. v. FHFA,*
   No. 13-cv-56, 2013 WL 4670668 (N.D. Ga. Aug. 30, 2013)......................11, 23

\* *Flynn v. C.I.R.*,
    269 F.3d 1064 (D.C. Cir. 2001) ..........................................................................29

*Ford v. Mabus*,
    629 F.3d 198, 206 (D.C. Cir. 2010) ...................................................................12

*Freeman v. San Diego Ass'n of Realtors*,
    322 F.3d 1133 (9th Cir. 2003) ............................................................................40

*FTC v. Tarriff*,
    584 F.3d 1088 (D.C. Cir. 2009) ........................................................................12

*Garcia v. San Antonio Metro. Transit Auth.*,
    469 U.S. 528 (1985) .....................................................................................32, 46

*Gard v. United States Dep't of Educ.*,
    No. 11-5020, 2011 WL 2148585 (D.C. Cir. May 25, 2011) .............................29

*Gibbons v. Ogden*,
    22 U.S. (9 Wheat.) 1 (1824) ..............................................................................30

*Gonzalez v. Raich*,
    545 U.S. 1 (2005) ........................................................................................41, 42

*Greiner v. Lewellyn*,
    258 U.S. 384 (1922) ...........................................................................................20

*Hall v. Am. Nat'l Red Cross*,
    86 F.3d 919 (9th Cir. 1996) ...............................................................................51

*Hall Cnty. v. FHFA*,
    No. 12-cv-4402, 2013 WL 4670612 (N.D. Ga. Aug. 30, 2013) ........................50

*Heart of Atlanta Motel, Inc. v. United States*,
    379 U.S. 241 (1964) .....................................................................................33, 41

*Hennepin Cnty. v. Fannie Mae*,
    No. 12-cv-2075, --- F. Supp. 2d ---, 2013 WL 1235589 (D. Minn. Mar.
    27, 2013) ............................................................................................................10

*Hertel v. Bank of Am.*,
    897 F. Supp. 2d 579 (W.D. Mich. 2012) .............................................10, 17, 20

*Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*,
   452 U.S. 264 (1981)..................................................................44

*Ill. Dep't of Rev. v. Hayslett/Judy Oil, Inc.*,
   426 F.3d 899 (7th Cir. 2005) ..............................................17

*Johnson v. Home State Bank*,
   501 U.S. 78 (1991)..................................................................26

*Johnson v. FHFA*,
   No. CV 3:12-068, 2013 WL 4516944 (S.D. Ga. July 3, 2013)..........11

*Jones v. Horne*,
   634 F.3d 588 (D.C. Cir. 2011)..............................................29

*Jones v. Rath Packing Co.*,
   430 U.S. 519 (1977)..................................................................35

*Liberty Mortg. Banking, Ltd. v. Fed. Home Loan Mortg. Corp.*,
   822 F. Supp. 956 (E.D.N.Y. 1993) ................................49, 51

*Laurens Fed. Savings & Loan Ass'n v. S.C. Tax Comm'n*,
   365 U.S. 517 (1961)..................................................................17

*MacDonald, Sommer & Frates v. Yolo Cnty.*,
   477 U.S. 340 (1986)..................................................................22

*Maryland v. Louisiana*,
   451 U.S. 725 (1981)..................................................................30

*Massey v. Fannie Mae*,
   No. CV 4:12-102, 2013 WL 4516836 (S.D. Ga. July 3, 2013)..........11

*McCulloch v. Maryland*,
   4 U.S. (4 Wheat.) 316 (1819) ..............................................30

*McLain v. Real Estate Bd. of New Orleans, Inc.*,
   444 U.S. 232 (1980)..................................................................40

*McNulty v. FHFA*,
   No. 3:12-cv-1822, --- F. Supp. 2d ---, 2013 WL 3147641
   (M.D. Pa. June 19, 2013)....................................11, 23, 28

*Milwaukee Cnty. v. Fannie Mae*,
    No. 12-cv-0732, 2013 WL 3490899 (E.D. Wis. July 10, 2013) ........................11

\*  *Montgomery Cnty., Md. v. FHFA*,
    No. 13-1691, --- F.3d ---, 2014 WL 279852,
    (4th Cir. Jan. 27, 2014) .................................... 22, 24, 25, 26, 33, 35, 36, 37, 38,
                                                            39, 40, 41, 42, 43, 44, 45, 46, 48

*Montgomery Cnty. Comm'n v. FHFA*,
    2:12-cv-885, 2013 WL 1896256 (M.D. Ala. May 6, 2013) .........................11, 23

*Montgomery Cnty. Comm'n v. FHFA*,
    No. 8:13-cv-66, 2013 WL 1832370 (D. Md. Apr. 30, 2013) .....11, 22, 24, 28, 43

*Murdock v. Ward*,
    178 U.S. 139 (1900) .................................................................................20

*Murphy v. I.R.S.*,
    493 F.3d 170 (D.C. Cir. 2007) ..............................................................14

*Mut. Pharm. Co., Inc. v. Bartlett*,
    133 S. Ct. 2466 (2013) ...........................................................................30

*Nat'l Fed'n of Indep. Businesses v. Sebelius*,
    132 S. Ct. 2566 (2012) ...........................................................................14

*NCAA v. Governor of New Jersey*,
    730 F.3d 208 (3d Cir. 2013) ..................................................................39

*New Jersey v. Consol. Rail Corp.*,
    690 F. Supp. 1061 (Sp. Ct. R.R.R.A. 1973) ........................................41

*Nicolai v. FHFA*,
    No. 8:12-cv-1335, --- F. Supp. 2d ---, 2013 WL 899967 (M.D. Fla. Feb.
    12, 2013) ..........................................................................................10, 17

*Norfolk & Western Ry. Co. v. Am. Train Dispatchers' Ass'n*,
    499 U.S. 117 (1991)..............................................................................10, 12

*Okla. Tax Comm'n v. Jefferson Lines, Inc.*,
    514 U.S. 175 (1995)...................................................................................31

*Okla. Tax Comm'n v. Tex. Co.*,
    336 U.S. 342 (1949)...................................................................................33

*Pharm. Research & Mfrs. of Am. v. Walsh*,
     538 U.S. 644 (2003)................................................................... 27-28

*Pittman v. Home Owners' Loan Corp.*,
     308 U.S. 21 (1939)................................................. 17, 25, 26, 28, 47

*Randolph Cnty. v. Fannie Mae*,
     No. 3:12-cv-886, 2013 WL 3947614 (M.D. Ala. July 31, 2013).....11, 23, 28, 43

*Ray v. Atl. Richfield Co.*,
     435 U.S. 151 (1978)..............................................................35

*Rice v. Santa Fe Elevator Corp.*,
     331 U.S. 218 (1947)..............................................................35

*Riegel v. Medtronic, Inc.*,
     552 U.S. 312 (2008)..............................................................35

*Rosenow v. State of Ill., Dep't of Revenue*,
     715 F.2d 277 (7th Cir. 1983) ..................................................... 15-16

*Rowan Cnty. v. Fannie Mae*,
     No. 1:12-cv-859, 2013 WL 5213719
     (M.D.N.C. Sept. 16, 2013).................................................. 11, 17, 23, 28, 33, 43

*Rust v. Johnson*,
     597 F.2d 174 (9th Cir. 1975) ....................................................50

*Sander v. Alexander Richardson Invs.*,
     334 F.3d 712 (8th Cir. 2003) .........................................................12

*SEPTA v. Pennsylvania Public Utility Commission*,
     826 F. Supp. 1506 (E.D. Pa. 1993)..............................................39, 41

*Simon v. Cebrick*,
     53 F.3d 17 (3d Cir. 1995) ...................................................48

*South Carolina v. Baker*,
     485 U.S. 505 (1988)..............................................................32

*Spoonamore v. FHFA, Spoonamore v. FHFA*,
     No. 12-cv-220, 2014 WL 201609(E.D. Ky. Jan. 17, 2014)..11, 23, 28, 39, 40, 43

*State Bd. of Ins. v. Todd Shipyards Corp.*,
    370 U.S. 451 (1962)...................................................................................31

*State of Nevada ex rel. Hager v. Countrywide Home Loans Servicing*,
    812 F. Supp. 2d 1211 (D. Nev. 2011)......................................................50

*Sullivan v. United States*,
    395 U.S. 169 (1969).............................................................................15, 16

*Trustees of Iron Workers Local 473 Pension Trust v. Allied Prods. Corp.*,
    872 F.2d 208 (7th Cir. 1989) ...................................................................12

*United States v. 4,432 Mastercases of Cigarettes, More Or Less*,
    448 F.3d 1168 (9th Cir. 2006) ...........................................................15, 16

*United States v. City of Detroit*,
    355 U.S. 466 (1958).............................................................................17, 38

*United States v. Gonzales*,
    520 U.S. 1 (1997)......................................................................................13

*U.S. Trust Co. v. Helvering*,
    307 U.S. 57 (1939)....................................................................................20

*United States v. Johnson*,
    529 U.S. 53, (2000)...................................................................................13

*United States v. Locke*,
    529 U.S. 89 (2000)....................................................................................34

*United States v. Lopez*,
    514 U.S. 549 (1995).......................................................................41, 42, 44

\*  *United States v. Michigan*,
    851 F.2d 803 (6th Cir. 1988) ..............................................................48, 49

*United States v. Morrison*,
    529 U.S. 598 (2000).................................................................40, 42, 44, 45

*United States v. New Mexico*,
    455 U.S. 720 (1988).........................................................................32, 48, 49

*United States ex rel. Totten v. Bombardier Corp.*,
  380 F.3d 488 (D.C.Cir. 2004)..................................................................28, 47

\* *United States v. Wells Fargo Bank*,
  485 U.S. 351 (1988)...............................................................17, 18, 19, 20, 25

*Vadnais v. Fannie Mae*,
  No. 12-cv-1598, 2013 WL 1249224 (D. Minn. Mar. 27, 2013)............. 10-11, 22

*Vadnais v. Fannie Mae*,
  No. 12-cv-1598, 2013 WL 3900037 (D. Minn. July 29, 2013)........ 10-11, 28, 43

*Wickard v. Filburn*,
  317 U.S. 111 (1942)................................................................................42

## STATUTES AND RULES

12 U.S.C. § 1451 ...............................................................................4, 39, 43

12 U.S.C. § 1452.................................... 1, 2, 4, 5, 9, 12, 13, 21, 35, 36

12 U.S.C. § 1716................................................................4, 39, 43, 44

12 U.S.C. § 1723a ................................. 1, 5, 7, 9, 12, 13, 21, 35, 36

28 U.S.C. § 1291 ..........................................................................................2

28 U.S.C. § 1331 ..........................................................................................2

28 U.S.C. § 1332 ..........................................................................................2

Housing and Economic Recovery Act of 2008, Pub L. No. 110-289, 122
  Stat. 2654, codified at 12 U.S.C. § 4617 *et seq.*.... 1, 4, 5, 7, 9, 12, 13, 21, 35, 36

68 Okla. Stat. Ann. § 2804.....................................................................23

68 Okla. Stat. Ann. § 3201.................................................................5, 23, 24

68 Okla. Stat. Ann. § 3203.....................................................................5, 24

## OTHER AUTHORITIES

*Webster's Unabridged Dictionary* (2d ed. 2001) ....................................12

## STATEMENT REGARDING ORAL ARGUMENT

Appellants' arguments lack merit and have been rejected by dozens of federal courts, including all Courts of Appeals to have addressed them in a decision (the Fourth, Sixth, and Seventh Circuits).  Nevertheless, the arguments implicate important principles of constitutional, statutory, and decisional law. Should the Court opt to hear argument, Appellees propose 20 minutes per side.

## INTRODUCTION

To facilitate and regulate the nationwide secondary market in home mortgages, Congress enacted statutes creating Defendants-Appellees the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac," together with Fannie Mae, the "Enterprises"), and the Federal Housing Finance Agency in its capacity as their Conservator ("FHFA," together with the Enterprises, the "Defendants").  In so doing, Congress mandated that each "shall be exempt from *all taxation* now or hereafter imposed by any … State" with a single, narrow carve-out that leaves their "real property … subject to" state and local "taxation … to the same extent as … other real property is taxed." 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2) (the "Exemption Provisions") (emphasis added).

Plaintiff nevertheless contends that Defendants must pay Oklahoma's real-estate transfer tax (the "Transfer Tax"), asserting that (i) the phrase "all taxation," as used in the Exemption Provisions, does not mean *all taxation*; (ii) the Transfer Tax falls within the narrow carve-out in the Exemption Provisions permitting taxation of real property; and (iii) the Exemption Provisions are unconstitutional. Basic principles of statutory construction and controlling Supreme Court precedent foreclose each of Plaintiff's arguments, some of which were forfeited below and all of which have been uniformly rejected by federal courts across the country — including the Fourth, Sixth, and Seventh Circuits — in substantially identical cases. This Court should affirm.

– 1 –

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 & 1332 and 12 U.S.C. § 1452(f).  This Court has jurisdiction over the district court's final order pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

**I.    Statutory Issues:**

    A.    Federal statutes exempt each Defendant from "all [state and local] taxation."  Plaintiff argues that these statutes leave Defendants liable for excise taxes, such as the state transfer taxes at issue.  Do Defendants' statutory exemptions from "all taxation" protect them from liability for *all* taxes, including the transfer tax, or only *some* but not *all* taxes?

    B.    The Exemption Provisions include a carve-out that leaves Defendants' "real property … subject to taxation."  The Oklahoma Transfer Tax is not imposed on real property.  Does the carve-out nevertheless permit the Transfer Tax?

**II.    Constitutional Issues:**

    A.    Plaintiff asserts two constitutional arguments that it never offered to the district court — that the Exemption Provisions exceed Congress's Commerce Clause power, and that Congress did not articulate a clear and manifest purpose to preempt state taxes.  This Court deems arguments not made below forfeited; it does not entertain them absent exceptional circumstances, which Plaintiff makes no attempt to show

– 2 –

(and could not show).  Are the forfeited arguments properly before the Court?

B.    The Supreme Court has held that federal statutes supersede powers "central to state sovereignty," including "the taxing authority of state government," where that is "the clear and manifest purpose of Congress."  Here, Congress expressly exempted Defendants from "all taxation, now or hereafter imposed by any State."  Do the Exemption Provisions supersede state tax law?

C.    The Enterprises' federal statutory charters, which include the Exemption Provisions, regulate the nationwide secondary mortgage market.  The secondary mortgage market inherently comprises interstate commerce.  Does the Commerce Clause support Congress's enactment of the Exemption Provisions?

D.    Federal instrumentality status is relevant to constitutional but not statutory immunity from state and local taxation.  Here, Congress not only statutorily exempted the Enterprises from state and local taxation, it also created them, limited their activities to an important federal mission, and subjected them to pervasive, ongoing federal supervision.  To the extent the Court wishes to address whether the Enterprises are constitutionally immune from state taxation, are the Enterprises federal instrumentalities?

## STATUTES AND REGULATIONS

All applicable statutes, etc., are contained in the Brief for Appellant.

– 3 –

## STATEMENT OF THE CASE

### I.      Statutory and Factual Background

Congress created Fannie Mae in the midst of the Great Depression to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation," thereby addressing uneven availability of credit by creating a national secondary mortgage market and making mortgage finance less susceptible to state-by-state variation.  12 U.S.C. § 1716.

Later, Congress chartered Freddie Mac for substantially the same mission, including to "provide ongoing assistance to the secondary market for residential mortgages," to strengthen and support "mortgages on housing for low- and moderate-income families" by "increasing the liquidity" of the market, and to "promote access to mortgage credit throughout the Nation."  *Id.* § 1451 note.

FHFA is an independent federal agency, created pursuant to the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (*codified in part at* 12 U.S.C. § 4617 *et seq.*), with comprehensive regulatory and oversight authority over the Enterprises.  On September 6, 2008, the Director of FHFA placed the Enterprises into FHFA conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs."  12 U.S.C. § 4617(a)(2). The Conservator has the statutory power to "operate" and "conduct all business" of the Enterprises, with the statutory mission of, among other things, "preserv[ing] and conserv[ing] the[ir] assets and property."  *Id.* § 4617(b)(2)(B).

– 4 –

Congress created all of the Defendants directly, enacting the Enterprises'

charters as federal statutes and creating FHFA as an independent federal agency.

In so doing, Congress granted each of the Defendants a broad statutory exemption

from "all" state and local taxation, except taxes on real property.

Fannie Mae's congressionally enacted charter provides that:

> [Fannie Mae], including its franchise, capital, reserves,
> surplus, mortgages or other security holdings, and
> income *shall be exempt from all taxation* now and
> hereafter imposed by *any State, ... county, municipality,
> or local taxing authority*, except that any real property of
> [Fannie Mae] shall be subject to State, territorial, county,
> municipal, or local taxation to the same extent as other
> real property is taxed.

12 U.S.C. § 1723a(c)(2) (emphases added).  Freddie Mac's federal statutory

charter and the FHFA Conservator's organic statute contain materially identical

provisions.  *Id.* § 1452(e) (Freddie Mac), § 4617(j)(1), (2) (FHFA).

Under Oklahoma law, a tax is "imposed on each deed, instrument, or writing

by which any lands, tenements, or other realty sold shall be granted, assigned,

transferred or otherwise conveyed to, or vested in, the purchaser or purchasers, or

any other person or persons, by his or their direction."  68 Okla. Stat. Ann. § 3201.

The statute provides that the Transfer Tax "shall be paid by the person who makes,

signs, issues, or sells any of the documents and instruments subject to the taxes

imposed by [§3201], or for whose use or benefit the same are made, signed, issued

or sold."  *Id.* §3203.

## II.    Procedural History

Plaintiff purports to bring a claim for unpaid taxes under Oklahoma statutes, 68 Okla. Stat. Ann § 3201 *et seq.*  Kay App'x 25-26 (First Amended Complaint). Plaintiff also seeks a declaratory judgment that Defendants are subject to the Transfer Tax, an order "[e]njoining Defendants from the unlawful practices and statutory violations" alleged, and "compensatory, liquidated, punitive, and statutory damages" and costs.  Kay App'x 24-25, 26-27.

The district court granted Defendants' motion to dismiss.  Concluding that "the meaning of the phrase 'all taxation' is clear," the district court held that, "[b]ecause the Exemption Statutes provide that FHFA, Fannie Mae, and Freddie Mac are exempt from 'all taxation,' they are exempt from the Transfer Tax."  Kay App'x 41.  The district court likewise rejected Plaintiff's argument that the Transfer Tax falls within the Exemption Provisions' carve-out permitting taxes on Defendants' real property, holding that "the Transfer Tax clearly does not fit into this exception."  Kay App'x 39.  "Just because a transfer tax is measured by the value of real property does not mean that the tax is a 'property tax.'"  *Id.*

This appeal followed.

## III.    Other Litigation Raising Similar Questions

The significance of this case sweeps far beyond Oklahoma.  More than 40 similar actions are pending in federal courts across the country.  *Every single one* of those courts to consider the issues presented here, including the Fourth, Sixth,

and Seventh Circuits, has ruled for Defendants.[1]  Additional appeals involving substantially the same issues are pending in the First, Third, Sixth, Eighth, Ninth, and Eleventh Circuits.[2]

## STANDARD OF REVIEW

This Court reviews de novo a district court's grant of a motion to dismiss.

*Emory v. United Air Lines, Inc.*, 720 F.3d 915, 921 (D.C. Cir. 2013).

## SUMMARY OF ARGUMENT

The Exemption Provisions mandate that Defendants "shall be exempt from all taxation now or hereafter imposed by any [state or local government]."  12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2).  Plaintiff nevertheless contends that Defendants are liable for Transfer Taxes, arguing principally that statutory

---

[1]    The Sixth Circuit reversed the one district court opinion that ruled against Defendants on one of the arguments that Plaintiff raises.

[2]    *See Floyd Cnty. v. FHFA*, No. 13-14094 (11th Cir.); *Randolph Cnty. v. Fannie Mae*, No. 13-13897 (11th Cir.); *Doggett v. FHFA*, No. 13-13150 (11th Cir.); *Athens-Clarke v. FHFA*, No. 13-12637 (11th Cir.); *Massey v. FHFA*, No. 13-13267 (11th Cir.); *Montgomery Cnty. Comm'n, Ala. v. FHFA*, No. 13-12615 (11th Cir.) (consolidated with *Floyd*, *Randolph*, *Athens-Clarke*, and *Massey*); *Hall Cnty., Ga. v. FHFA*, No. 13-4439 (11th Cir.) (stayed pending disposition of other 11th Circuit consolidated appeals); *DeKalb Cnty., Ga. v. FHFA*, No. 13-14447 (11th Cir.) (same); *Spokane v. Fannie Mae*, No. 13-35655 (9th Cir.); *Vadnais v. Fannie Mae*, No. 13-2733 (8th Cir.); *Hennepin v. Fannie Mae*, No. 13-1821 (8th Cir.); *Bd. of Comm'rs of Montgomery Cnty. v. FHFA*, No. 13-4429 (6th Cir.); *McNulty v. FHFA*, No. 13-3175 (3d Cir.); *Cape May Cnty. v. Fannie Mae*, 13-2501 (3d Cir.); *Delaware Cnty., Pa. v. FHFA*, No. 13-2163 (3d Cir.) (consolidated with *Cape May* and *McNulty*); *Town of Johnston v. FHFA*, No. 13-2034 (1st Cir.); *Comm'rs of Bristol Cnty. v. Fannie Mae, et al.*, No. 13-2116 (1st Cir.) (consolidated with *Town of Johnston*).

exemptions from "all taxation" do not cover excise taxes. Plaintiff's argument, with slight variations, has been asserted in dozens of similar actions around the country; it has not prevailed anywhere, for the obvious reason that "all taxation," as used in the Exemption Provisions, plainly means just that — *all taxation*.

Plaintiff also contends that the Exemption Provisions' property-tax carve-out leaves Defendants liable for the Transfer Tax. But, because the Transfer Tax is not a property tax, the carve-out simply does not apply.

Finally, Plaintiff contends that the Exemption Provisions do not withstand constitutional scrutiny and that the Enterprises cannot benefit from implied constitutional immunity. In the district court, Plaintiff argued in a footnote that the Constitution requires that the Enterprises be deemed federal instrumentalities for the Exemption Statutes to be valid, but this argument has been abandoned by Plaintiff on appeal. Switching tactics, Plaintiff now asserts for the first time that the Exemption Provisions are unconstitutional because, purportedly, (1) the purpose of the Exemption Provisions to trump state tax power is not sufficiently "clear and manifest" to overcome countervailing federalism concerns, and (2) Congress lacked power under the Commerce Clause to enact the Exemption Provisions. Plaintiff forfeited these arguments by failing to raise them in the district court. Forfeiture aside, each fails on the merits. Congress's purpose to override state tax law could not have been any more "clear" or "manifest"; the Exemption Provisions expressly immunize Defendants from "all taxation now or hereafter imposed by any State." And in enacting Defendants' federal statutory charters, of which the Exemption Provisions are an integral part, Congress

– 8 –

regulated the nationwide secondary mortgage market, which unquestionably has a close and substantial relationship to interstate commerce. Thus, the Commerce Clause plainly supports Congress's authority to grant the exemptions.

Plaintiff also argues that because the Enterprises are private entities, they are not federal instrumentalities for purposes of implied constitutional immunity from state taxation. The implied constitutional immunity analysis does not turn solely on whether the Enterprises are private or public, and the Enterprises are federal instrumentalities that enjoy constitutional immunity. But the Court need not resolve the question in any event because, as the Supreme Court has held and as Plaintiff recognizes, it is "unnecessary" for courts to determine whether statutorily exempt entities are federal instrumentalities before applying exemption provisions.

A reversal here on any issue would contravene Supreme Court precedent and place this Court in direct conflict with the Fourth, Sixth, and/or Seventh Circuits, each of which has addressed substantially identical taxes and none of which has adopted *any* argument offered by Plaintiff. Those courts and the district court below decided the issues correctly; accordingly, the district court should be affirmed.

## ARGUMENT

## I.  DEFENDANTS' STATUTORY ARGUMENTS FAIL

### A.  Defendants' Exemptions from "All Taxation" Protect Them from Liability for *All* Forms of Tax

Congress expressly exempted each Defendant from "all [state and local] taxation." 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2). That unambiguous

– 9 –

enactment is dispositive here; Defendants are exempt from liability for all forms of

state taxation, including the Transfer Tax.

> ### 1.     The Plain Meaning of the Federal Statutes Exempting Defendants from "All [State and Local] Taxation" is Dispositive

"When [a] statute's language is plain, the sole function of the courts … is to

enforce it according to its terms."  *Dodd v. United States*, 545 U.S. 353, 359 (2005)

(citation omitted); *see also Cnty. of Oakland v. FHFA*, 716 F.3d 935, 939-40 (6th

Cir. 2013).  "If the intent of Congress is clear, that is the end of the matter; for the

court … must give effect to the unambiguously expressed intent of Congress."

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 128 (1991)

(citation omitted).  Here, the plain language exempting Defendants from "all" state

and local taxation "should be the end of the matter."  *Dist. of Columbia ex rel.*

*Hager v. Fannie Mae*, 882 F. Supp. 2d 107, 112 (D.D.C. 2012) (citation omitted).

In response, Plaintiff implausibly contends that "all taxation" does not mean

"all taxation," claiming that the Exemption Provisions apply only to direct taxes,

not excise taxes.  App. Br. 5.  That is incorrect.  Both the Seventh and the Sixth

Circuits,[3] as well as every federal district court but one to have examined the

question, have held that the Exemption Provisions unambiguously preclude

collection of real-estate transfer taxes from Defendants.[4]  In reversing the sole

---

[3]     In *Montgomery*, the Fourth Circuit did not address this argument because the
appellants in that case waived it on appeal.

[4]     *See DeKalb Cnty. v. FHFA*, --- F.3d ---, 2013 WL 7098638 (7th Cir. Dec. 23
2013) ("*DeKalb*"); *Oakland*, 716 F.3d 935; *Hager*, 882 F. Supp. 2d 107; *Hertel v.*

*(footnote continued on next page)*

– 10 –

contrary decision, the Sixth Circuit held that "a straightforward reading of the

---

*(footnote continued from previous page)*

*Bank of Am.*, 897 F. Supp. 2d 579 (W.D. Mich. 2012); *Nicolai v. FHFA*, No. 8:12-cv-1335, --- F. Supp. 2d ---, 2013 WL 899967 (M.D. Fla. Feb. 12, 2013); *Fannie Mae v. Hamer*, No. 3:12-cv-50230, 2013 WL 591979 (N.D. Ill. Feb. 13, 2013); *DeKalb Cnty. v. FHFA*, No. 3:12-cv-50227 (N.D. Ill. Feb. 14, 2013), ECF No. 47 ("*DeKalb, IL*"); *Delaware Cnty., Pa. v. FHFA*, No. 2:12-cv-4554, 2013 WL 1234221 (E.D. Pa. Mar. 26, 2013); *Hennepin Cnty. v. Fannie Mae*, No. 12-cv-2075, --- F. Supp. 2d ---, 2013 WL 1235589 (D. Minn. Mar. 27, 2013); *Vadnais v. Fannie Mae*, No. 12-cv-1598, 2013 WL 1249224 (D. Minn. Mar. 27, 2013) ("*Vadnais I*"), *motion to amend denied*, 2013 WL 3900037 (D. Minn. July 29, 2013) ("*Vadnais II*"); *Montgomery Cnty. v. FHFA*, No. 8:13-cv-66, 2013 WL 1832370 (D. Md. Apr. 30, 2013) ("*Montgomery, MD*"); *Cape May Cnty. v. Fannie Mae*, No. 12-cv-4712 (D.N.J. Apr. 30, 2013) (Appellees' Addendum ("Add.") 1); *Montgomery Cnty. Comm'n v. FHFA*, No. 2:12-cv-885, 2013 WL 1896256 (M.D. Ala. May 6, 2013) ("*Montgomery, AL*"); *Athens-Clarke Cnty. v. FHFA*, 945 F. Supp. 2d 1401 (M.D. Ga. May 14, 2013); *Butts v. Fannie Mae*, No. 9:12-cv-1912 (D.S.C. May 23, 2013) (Add. 42); *Doggett v. FHFA*, No. 2:12-cv-553, 2013 WL 2920388 (M.D. Fla. June 13, 2013); *McNulty v. FHFA*, No. 3:12-cv-1822, --- F. Supp. 2d ---, 2013 WL 3147641 (M.D. Pa. June 19, 2013); *City of Spokane v. Fannie Mae*, No. cv-13-0020, 2013 WL 3288413 (E.D. Wash. June 28, 2013); *Johnson v. FHFA*, No. CV 3:12-068, 2013 WL 4516944 (S.D. Ga. July 3, 2013); *Massey v. Fannie Mae*, No. CV 4:12-102, 2013 WL 4516836 (S.D. Ga. July 3, 2013); *Milwaukee Cnty. v. Fannie Mae*, No. 12-cv-0732, 2013 WL 3490899 (E.D. Wis. July 10, 2013); *City of Providence v. Fannie Mae*, No. 12-481L, --- F. Supp. 2d --, 2013 WL 3816429 (D.R.I. July 24, 2013) (also dismissing materially similar claims in *Town of Johnston, R.I. v. FHFA*, No. 12-668L (D.R.I.)); Kay App'x at 32-41; *Randolph Cnty. v. Fannie Mae*, No. 3:12-cv-886, 2013 WL 3947614 (M.D. Ala. July 31, 2013); *Comm'rs of Bristol Cnty. v. Fannie Mae*, No. 12-cv-11525, 2013 WL 4095021 (D. Mass. Aug. 9, 2013); *DeKalb Cnty. v FHFA*, No. 12-cv-2470, 2013 WL 4670534 (N.D. Ga. Aug. 30, 2013) ("*DeKalb, GA*"); *Floyd Cnty. v. FHFA*, No. 13-cv-56, 2013 WL 4670668 (N.D. Ga. Aug. 30, 2013); *Hall Cnty. v. FHFA*, No. 12-cv-4402, 2013 WL 4670612 (N.D. Ga. Aug. 30, 2013); *Rowan Cnty. v. Fannie Mae*, No. 1:12-cv-859, 2013 WL 5213719 (M.D.N.C.  Sept. 17, 2013); *Bd. of Comm'rs of Montgomery Cnty. v. FHFA*, No. 3:12-cv-216, 2013 WL 5755420 (S.D. Ohio Oct. 23, 2013) ("*Montgomery, OH*"); *Spoonamore v. FHFA*, No. 5:12-cv-220, 2014 WL 201609 (E.D. Ky. Jan. 17, 2014).

[exemption] statute[s] leads to the unremarkable conclusion that when Congress said 'all taxation,' it meant *all* taxation." *Oakland*, 716 F.3d at 940 (emphasis in original).

### a.    "All Taxation" Means All Taxation

It is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their "ordinary, contemporary, common meaning." *FTC v. Tarriff*, 584 F.3d 1088, 1090 (D.C. Cir. 2009) (citation omitted). Here, Congress mandated that each Defendant "shall be exempt" from "all taxation now or hereafter imposed by any State, county, municipality, or local taxing authority." 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2).

The ordinary meaning of "all" is "[t]he whole of," "every, all kinds, all sorts," and "any whatever," and there is nothing absurd about interpreting "all" to mean *all*. *Webster's Unabridged Dictionary* 54 (2d ed. 2001). In short, "'all' means all." *Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 716 (8th Cir. 2003) (citation omitted). Accordingly, the Supreme Court has held it is "inherent in the word 'all'" that "no limitation" is intended. *Norfolk*, 499 U.S. at 129. Indeed, Congress "kn[ows] the difference between 'all,' 'substantially all,' and 'virtually all'; and [where] it opt[s] for the unqualified 'all,'" that language must be given its expansive, natural meaning. *Trustees of Iron Workers Local 473 Pension Trust v. Allied Prods. Corp.*, 872 F.2d 208, 213 (7th Cir. 1989); *see also Ford v. Mabus*, 629 F.3d 198, 206 (D.C. Cir. 2010) (noting that "'[a]ny,' after all, means any" in statute mandating that certain actions be free from "any discrimination based on age") (citation omitted).

– 12 –

Hence, "[t]he question … is whether the phrase [Congress enacted] means what it says, or whether it should be limited to some subset" of its express object — here, "all taxation." *See United States v. Gonzales*, 520 U.S. 1, 5 (1997).  As in *Gonzales*, "Congress did not add any language limiting the breadth of [the provision], and so we must read [the statute] as referring to all," and not merely some. *Id*.  Moreover, Congress's inclusion of a single, narrow exception to each Exemption Provision — allowing taxation of Defendants' real property, 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(1), (2) — defeats any attempt to infer others. "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others.  The proper inference … is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000).  Here, because "Congress explicitly created a carve-out … permitting taxes on real property," but "did not provide a similar carve out" for transfer taxes, courts are "not in a position to second-guess Congress and create a new exception for ... transfer taxes." *Oakland*, 716 F.3d at 940; *see DeKalb*, 2013 WL 7098638, at *4.

### b.    Any Other Definition of "All Taxation" Would Lead to Absurd Results

Plaintiff argues that when enacted in a statute, the words "all taxation" mean far less than "all taxation"— *i.e.*, *direct* taxation but not *excise* taxation.  Casting the plain meaning of the statutory language aside in that way would flout the "cardinal canon" of statutory interpretation "that courts must presume that a legislature says in a statute what it means and means in a statute what it says

– 13 –

there." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992).  For Congress

to grant Defendants effective protection from all forms of taxation, Plaintiff

apparently would require an everything-and-then-some statutory formulation, such

as "all taxation plus excise taxation and every other form of taxation."  Such

"magic words" are "never required."  *See F.A.A. v. Cooper*, 132 S. Ct. 1441, 1448

(2012).

Moreover, Plaintiff's proposed construction of "all taxation" — to include

only direct taxes and not excise taxes — would eviscerate the Exemption

Provisions.  This is because only three taxes are definitively known to be direct:

"(1) a capitation [tax], U.S. Const. art. I, § 9, (2) a tax on real property, and (3) a

tax upon personal property."  *Murphy v. I.R.S.*, 493 F.3d 170, 181 (D.C. Cir. 2007)

(citations omitted); *see DeKalb*, 2013 WL 7098638, at *3; *Oakland*, 716 F.3d at

943-44.[5]  Capitations are rare and apply only to natural persons, not corporate

entities, and the Exemption Provisions' carve-out provision allows taxation of real

property; thus, by Plaintiff's logic, an "all taxation" exemption would cover only

personal property taxes.  If Congress meant to enact such limited protection, it

surely would not have employed the expansive language "all taxation."

### 2.     The Supreme Court's *Bismarck* Decision Controls Here

In *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95

(1941), the Supreme Court held that a federal statute exempting particular entities

---

[5]     *See also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2599 (2012)
("[R]ecognized categor[ies] of direct tax" include only "capitation" and "tax on the
ownership of land or personal property.").

– 14 –

(Federal Land Banks) from "Federal, State, municipal, and local taxation" precluded a state from collecting a state sales tax from the exempt entity. *Id.* at 99-100. The *Bismarck* Court explained that "[t]he unqualified term 'taxation' … clearly encompasses within its scope [the] sales tax" at issue in the case, and noted that the statutory protection "cannot … be frittered away" by ignoring the plain meaning of the language Congress enacted. *Id.* at 99. Thus, "*Bismarck* … stand[s] for the proposition that when Congress broadly exempts an entity from 'taxation' or 'all taxation[,]' it means *all* taxation." *Oakland*, 716 F.3d at 941 (emphasis in original).

The sales tax in *Bismarck* and the Transfer Tax here are virtually identical in all relevant ways. Just like the Transfer Tax, "a sales tax[] is an excise or privilege tax different in kind from a tax on property." *Sullivan v. United States*, 395 U.S. 169, 177 n.28 (1969); *see also United States v. 4,432 Mastercases of Cigarettes, More Or Less*, 448 F.3d 1168, 1185 (9th Cir. 2006) ("[t]he quintessential excise tax in our country is the sales tax"). Each is triggered by a sales transaction and computed in reference to the value of the property conveyed. Accordingly, the district court correctly ruled that *Bismarck* controls and "bolster[s]" Defendants' interpretation of the Exemption Provisions. Kay App'x 38, 40; *see DeKalb*, 2013 WL 7098638, at *4; *Oakland*, 716 F.3d at 941.

Plaintiff seeks to distinguish *Bismarck* on grounds that it purportedly involved a "tax on the entity," whereas the Transfer Tax is a tax "levied on the deed, not on the Entities." App. Br. 11. In other words, Plaintiff attempts to portray the sales tax in *Bismarck* as a direct tax on an entity while the Transfer Tax

– 15 –

is an excise tax on a transaction.  Not so.  Plaintiff confuses *Bismarck*'s discussion of who bears the incidence of an "indirect" or excise tax — the purchaser or the seller — with the nature of the underlying tax.  As discussed above, "there is no question that a 'sales tax' is an excise tax," thereby foreclosing this argument. *Rosenow v. State of Ill., Dep't of Revenue*, 715 F.2d 277, 279 n.4 (7th Cir. 1983); *see 4,432 Mastercases of Cigarettes*, 448 F.3d at 1185.  Indeed, the Supreme Court often has explained that ordinary sales taxes are not direct taxes, even where a state incorrectly labels them as such.  *See*, *e.g.*, *Sullivan*, 395 U.S. at 177 n.28 ("a sales tax[] is an excise or privilege tax"); *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 131 S. Ct. 1101, 1107 (2011) (noting "[a]n excise tax, like Alabama's sales and use tax" was not a direct tax, regardless of how a taxing authority might wish to characterize it).  This same argument was made to the Seventh Circuit in *DeKalb*; the panel plainly found it without merit, comparing the entity exemption and sales tax in *Bismarck* to the Exemption Provisions and transfer taxes at issue in *DeKalb*. *DeKalb*, 2013 WL 7098638, at *5.

At bottom, the sales tax in *Bismarck* and the Transfer Tax are equivalent. Both taxes — the sales taxes for which the purchaser was liable in *Bismarck* and the Transfer Tax for which the grantor is liable here — are taxes that the exempt entity would otherwise bear.  Thus, *Bismarck* confirms that where, as here, Congress exempts an entity from taxation in general, the exempt entity cannot be liable for excise taxes or any other form of tax.

As numerous courts have now explained, entity exemptions preclude excise taxes like the sales tax in *Bismarck* or the Transfer Tax here because an excise tax

necessarily is imposed on an entity involved in exercising the privilege or performing the activity that triggers the tax.[6]  Neither privileges nor activities can pay taxes; an entity or person instead is liable.  *See Providence*, 2013 WL 3816429 at *5 ("An entity, like a person, is subject to direct taxation on property or income, and is also subject to excise taxes on transactions, such as estate taxes or transfer taxes.").  Put differently, "[t]o tax the transfer is to tax the entity who has to pay the tax ….  It defies common sense to argue that a tax on a transfer is not also a tax on the entity that has to pay it."  *Hertel*, 897 F. Supp. 2d at 584; *see also Hager*, 882 F. Supp. 2d at 112; *Nicolai*, 2013 WL 899967, at *5; *Providence*, 2013 WL 3816429 at *5; *Rowan*, 2013 WL 5213719, at *4.[7]  *Bismarck* confirms that the plain text of the Exemption Provisions immunizes Defendants from materially all state and local taxation.

---

[6]     Regardless, a statutory exemption bars not only taxes for which the exempt entity is liable, but any tax imposed on the exempt entity's transactions.  *See Laurens Fed. Savings & Loan Ass'n v. S.C. Tax Comm'n*, 365 U.S. 517, 519-20 (1961); *Pittman v. Home Owner's Loan Corp.*, 308 U.S. 21, 31-32 (1939).

[7]     As in *Bismarck*, the Supreme Court and other courts routinely note that excise taxes, although not "direct" taxes on an entity, still are "imposed on" and "tax" the entity liable to pay them.  For example, in *United States v. City of Detroit*, the Supreme Court noted that "a tax on the lessee's privilege of using the [government-owned] property" is "a tax which is imposed on a party using tax-exempt property for its own … [']use' and 'advantage.'"  355 U.S. 466, 469, 472 (1958) .  And in *Bromley v. McCaughn*, the Court explained that the federal gift tax is a "tax levied upon donors."  280 U.S. 124, 139 (1929); *see also Ill. Dep't of Rev. v. Hayslett/Judy Oil, Inc.*, 426 F.3d 899, 905 (7th Cir. 2005) (similar).

– 17 –

### 3.    *Wells Fargo* **Is Inapposite**

Plaintiff's counterintuitive argument — that "all" does not mean all — is premised on a mistaken reading of *United States v. Wells Fargo Bank*, 485 U.S. 351, 358 (1988).  Plaintiff argues that under *Wells Fargo*, an exemption from "all taxation" is a "term of art" with a "technical 'understood meaning'" that "applies only to *direct* taxes," not "*indirect* taxes."  App. Br. 8, 9 (emphasis original).  This is incorrect.  No Supreme Court decision has *ever* defined the phrase "all taxation" as a term of art, let alone defined it to mean substantially less than all taxation.  And because the Supreme Court has *never* articulated a term-of-art definition of "all taxation," any argument that Congress "adopt[ed]" into the Exemption Provision the narrow meaning Plaintiff seeks to ascribe fails.  *See* App. Br. 8.

*Wells Fargo* addressed whether the Housing Act — a federal statute that exempted specific *property* ("project notes") from "all taxation" — barred the estate tax, a form of excise tax imposed on a decedent's conveyance of property at death.  485 U.S. at 355.  As Plaintiff notes, the Supreme Court explained that:

> Well before the Housing Act was passed, *an exemption of property from all taxation had an understood meaning: the property was exempt from* direct *taxation, but certain privileges of ownership incident thereto, such as the right to transfer the property, could be taxed*.  Underlying this doctrine is the distinction between an excise tax … and a tax levied upon the property itself.  The former has historically been permitted even where the latter has been constitutionally or statutorily forbidden.

App. Br. 9-10 (quoting *Wells Fargo*, 485 U.S. at 355) (Plaintiff's emphasis).

Contrary to Plaintiff's argument, the Supreme Court's language does *not* articulate

a term-of-art definition of the phrase "all taxation" or "exempt from all taxation," let alone one that differs from the plain meaning of the words. The only phrase the Court described as having "an understood meaning" is "an exemption *of property* from all taxation," which the Court described as implying that "*the property* was exempt from direct taxation" — because that is the only form of tax "*levied upon the property itself.*" *Wells Fargo*, 485 U.S. at 355 (emphases added).[8]

The Supreme Court acknowledged that because the object of the relevant exemption from "all taxation" was property, the exemption necessarily covered *all taxation levied on the property*, but did not cover taxes that were *not levied on the property*. *Id*. Hence, "*Wells Fargo* did not mandate an atextual reading of 'all taxation'; it simply considered the inherent limitations of exempting property, rather than its owner, from taxation." *Hager*, 882 F. Supp. 2d at 112. Thus, Plaintiff's argument rests on a mistaken understanding of *Wells Fargo* — namely, that *Wells Fargo* broadly defined "exempt from all taxation" for all time and purposes, when in fact the Court analyzed only the narrow question of whether statutes that exempt property from taxation have any application to a non-exempt entity's liability for taxes not levied on that exempt property. *See, e.g.*, *DeKalb*,

---

8       Purportedly quoting from *Wells Fargo*, Plaintiff alters the text to suggest that the Supreme Court held there was an "understood meaning of ['all taxation'] in § 5(e)." App. Br. at 10 (bracketed material inserted by Plaintiff). The sentence in *Wells Fargo* actually begins: "The understood meaning *of § 5(e)* . . . ." 485 U.S. at 359 (emphasis added). Hence, the Court is discussing the "understood meaning" of *a property-exemption statute*, thereby acknowledging the limited context of its discussion and the consequent limited application of its decision. Plaintiff seeks to gloss over these critical points by substituting its own, inaccurate language.

– 19 –

2013 WL 7098638, at *5; *Oakland*, 716 F.3d at 943; *Providence*, 2013 WL 3816429, at *5.

Plaintiff notes that *Wells Fargo* cites decisions dating back decades.  App. Br. 10.  But Plaintiff fails to explain that each such decision, like *Wells Fargo*, addresses whether an exemption of specific *property* from taxation barred the imposition of taxes on *non-exempt entities*.  *See Wells Fargo*, 485 U.S. at 355-56 (citing *Greiner v. Lewellyn*, 258 U.S. 384 (1922); *Murdock v. Ward*, 178 U.S. 139 (1900); *U.S. Trust Co. v. Helvering*, 307 U.S. 57 (1939)).  None of these cases — nor any other Supreme Court decision of which Defendants are aware — purports to define "all taxation" to include anything less than *all* taxation, or to hold an entity statutorily exempt from "all taxation" liable for any form of tax.  *See Oakland*, 716 F.3d at 942 & n.8; *Hertel*, 897 F. Supp. 2d at 582.

As several courts have noted, if the Supreme Court meant for *Wells Fargo* to establish a term-of-art definition for "all taxation," as Plaintiff suggests, it would have had to overrule, or at least discuss and distinguish, *Bismarck*.  *See, e.g.*, *DeKalb*, 2013 WL 7098638, at *4; Kay App'x 40.  The fact that *Wells Fargo* does not mention *Bismarck* confirms that the Supreme Court views each decision as controlling in its respective context.  Thus, the Supreme Court has recognized that entity exemptions and property exemptions apply differently to excise taxes — because such taxes are *not* taxes on property.  *Compare Wells Fargo*, 485 U.S. at 355 (property exemption does not bar excise tax) *with Bismarck*, 314 U.S. at 99 (entity exemption "clearly encompasses within its scope a sales tax").  *Bismarck*,

which interprets an entity exemption like those at issue here, is the controlling precedent, and this Court must apply it.

### 4.    Sound Policy Principles Support the Distinction between Entity Exemptions and Property Exemptions

The distinction between entity exemptions and property exemptions is principled and sound.  If property exemptions were construed to cover excise taxes that are not imposed on the property but for which the property's owner (or grantor) is liable — such as estate and gift taxes — the exempt property would become an obvious mechanism for tax avoidance.  Taxpayers simply could convert taxable property into exempt property before a conveyance, thereby allowing the recipient to take the property tax-free and then immediately convert it back into taxable property.  Indeed, *Plummer* confirms that the Supreme Court has long construed property exemptions to prevent just that, explaining that it cannot "be readily supposed that [a citizen's obligation to pay an estate tax] can be evaded or defeated by the particular form in which *the property* of the decedent was invested."  178 U.S. 115, 138 (1900) (emphasis added).

By contrast, limiting *entity* exemptions to "direct" taxes, as Plaintiff urges, would further no such interest.  Unlike exempt property, exempt entities are not fungible, and therefore cannot readily be employed to avoid excise taxes.

### B.    The Property Tax Carve-Out Does Not Permit Transfer Taxes

The Exemption Provisions contain a single, narrow carve-out that leaves Defendants' "real property … subject to … [state and local] taxation to the same extent as other real property is taxed."  12 U.S.C. §1723a(c)(2); *see also* 12 U.S.C.

– 21 –

§§ 1452(e), 4617(j)(2).  The Transfer Tax is not a tax to which real property is

subject.  Accordingly, it falls within the broad sweep of the exemption rather than

the narrow scope of the carve-out.

　　　　Plaintiff's contrary argument has been squarely rejected by every single one

of the 22 federal court decisions to address the issue.  The Seventh Circuit recently

held in a materially identical case that "a tax on a real estate sale is a tax not on

property but on the transfer of property — a well-recognized distinction."  *DeKalb*,

2013 WL 7098638, at *3.  It thus rejected the contention that a "real estate transfer

tax is a property tax and is therefore excluded from" the Exemption Provisions.  *Id.*

at *5.  The Fourth Circuit similarly noted that "every legal and common

understanding distinguishes a property tax from a transfer or sales tax" and

concluded that the carve-out "undoubtedly refer[s] to real property taxes imposed

on the *ownership* of real property and not to transfer taxes imposed on the *transfer*

of real property."  *Montgomery Cnty., Md. v. FHFA*, No. 13-1691, --- F.3d ---,

2014 WL 279852, at *4 (4th Cir. Jan. 27, 2014) ("*Montgomery*") (emphasis

added).  And the Sixth Circuit held that transfer taxes, "as [] privilege tax[es], do[]

not fit into the carve out allowing for taxes on real property" because they are "not

on the property itself."  *Oakland*, 716 F.3d at 939 n.6.[9]  This conclusion has been

echoed by 19 federal district courts.[10]

--------

[9]     Plaintiff argues that the Sixth Circuit's ruling is dicta.  App. Br. 15 n.5.  Not
so; it is one of two alternative holdings.  *Oakland*, 716 F.3d at 939 n.6 (emphasis
added).  When a court "explain[s] . . . two reasons" for its decision, but "[does] not
rest its holding on only one of its two stated reasons, it is appropriate to treat them
[both] as alternative bases of decision."  *MacDonald, Sommer & Frates v. Yolo*

*(footnote continued on next page)*

– 22 –

The underlying reasoning is straightforward and sound.  The carve-out "does not provide that the entities are liable for taxes *related to* real property; the exception makes them liable only for taxes on real property."  *Providence*, 2013 WL 3816429, at *7 (emphasis in original); *see also McNulty*, 2013 WL 3147641, at *7 (the carve-out "applies to taxes imposed directly on the real property *itself* and not the *transfer* of the real property") (emphases added).  Plaintiff's contrary argument "is creative but wrong," because a transfer tax "is an excise tax" and "does not tax real property."  *Providence*, 2013 WL 3816429, at *7; *see also DeKalb*, 2013 WL 7098638, at *4 ("a transfer tax is not a property tax even when the transfer is of property").

Oklahoma's statutory taxation scheme confirms this point.  Oklahoma imposes a tax on real property that is entirely separate from the Transfer Tax.  *See* 68 Okla. Stat. Ann. § 2804 ("All *property* in this state, whether *real* or personal, … shall be *subject to* ad valorem taxation.") (emphasis added).  The Transfer Tax, on

---

*(footnote continued from previous page)*

*Cnty.*, 477 U.S. 340, 346 n.4 (1986).

[10]     *See Delaware*, 2013 WL 1234221, at *6; *Vadnais I*, 2013 WL 1249224, at *3 n.8; *Montgomery, MD*, 2013 WL 1832370, at *11; *Cape May*, No. 12-cv-4712, Tr. at 31 (Add. 32); *Montgomery, AL*, 2013 WL 1896256, at *4; *Athens-Clarke*, 945 F. Supp. 2d at 1411; *Butts*, No. 9:12-cv-1912 , slip op. at 13 (Add. 54); *Doggett*, 2013 WL 2920388, at *2 n.2; *McNulty*, 2013 WL 3147641, at *7; *Spokane*, 2013 WL 3288413, at *4; *Providence*, 2013 WL 3816429, at *7; Kay App'x 39; *Randolph*, 2013 WL 3947614, at *4; *Bristol*, 2013 WL 4095021, at *4; *DeKalb, GA*, 2013 WL 4670534, at *2-3; *Floyd*, 2013 WL 4670668, at *2-3; *Hall*, 2013 WL 4670612, at *2-3; *Rowan*, 2013 WL 5213719, at *5; *Spoonamore*, 2014 WL 201609, at *4.

– 23 –

the other hand, is "imposed on each deed, instrument, or writing by which [property] shall be [transferred]," *id.* § 3201, which "shall be paid by any person who makes, signs, issues, or sells any of the documents and instruments subject to the taxes … or for whose use or benefit the same are made, signed, issued or sold," *id.* § 3203.  As the Fourth Circuit noted in evaluating Maryland and South Carolina tax statutes, the fact that property tax statutes — but not transfer tax statutes — make property "subject to" the tax confirms that only the property tax fits into the rubric of the carve-out.  *Montgomery*, 2014 WL 279852, at *4.

Plaintiff's "bundle of sticks" argument — that "[t]he term 'real property' includes the transfer of that property," *see* App. Br. 13 — fares no better. Conveyance taxes such as the Transfer Tax are not imposed on any "stick" in the bundle of property rights.  Such taxes are imposed only when the right to convey is *exercised*, not whenever the right *exists* — otherwise, one would be required to pay the Transfer Tax every year of ownership.  The Transfer Tax is imposed on the action, not on the right.  *Montgomery, MD*, 2013 WL 1832370, at *11 ("Mere possession of [certain property] rights ... does not trigger the Transfer Taxes, which are imposed only when these rights are exercised.").[11]  Indeed, the Seventh Circuit squarely rejected this same argument, noting that even if the Transfer Tax is

---

[11]     The fact that the grantor is required to pay the Transfer Tax, as Plaintiff admits, App. Br. 3, further undermines the argument.  At the time of taxation, the grantor no longer holds *any* right in the property, as it has already been conveyed to the grantee.  The Transfer Tax allows the parties to obtain formal recordation of the property transfer, but is not a requirement for the transfer itself to take place.

imposed on deeds — as indeed it is here under the language of the statute, 68 Okla. Stat. Ann. § 3201 — "[a] deed is not real estate, any more than a car title is a car." *DeKalb*, 2013 WL 7098638, at \*5. The Fourth Circuit similarly dismissed this "bundle of sticks" argument, noting that it would require "any reference to a personal property tax" to "also be a reference to sales taxes" despite an established understanding that the two are different. *Montgomery*, 2014 WL 279852, at \*3.

*Wells Fargo* confirms the point. There, the Supreme Court held that a statutory exemption of specific property from "all taxation" did not bar a conveyance tax (the estate tax) because the tax was not "levied upon the property itself." 485 U.S. at 355. If taxing a *property transfer* were tantamount to taxing the owner's *interest in the underlying property*, as Plaintiff contends, then the property exemption would have applied and the tax would have been barred. But the Supreme Court held just the opposite. *See id.* Plaintiff attempts to explain *Wells Fargo* by contending that the estate tax at issue in that case was a tax, albeit an indirect one, on the property. App. Br. 14. Yet Plaintiff elsewhere quotes language from *Wells Fargo* that refutes its own argument: "Underlying this doctrine is the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself." *Id.* at 10 (quoting *Wells Fargo*, 485 U.S. at 355). Plaintiff's request that this Court find that the Transfer Tax is a tax to which the Defendants' "real property" is "subject" is thus undermined by *Wells Fargo*, which states unambiguously that an excise tax is "levied upon the *use or transfer*

– 25 –

of property," as opposed to being "levied upon the *property itself*." *Id*. (emphasis added); *Montgomery*, 2014 WL 279852, at *4.

In an attempt to rehabilitate the "bundle of sticks" argument, Plaintiff misreads *Pittman*, which actually held that a statute exempting *an entity* from "all taxation," which "includ[ed]" the entity's "loans," exempted the entity from taxation relating to "the entire process" of lending.  It has no bearing on the question, relevant to the carve-out, of what taxes are imposed on property.  *See* App. Br. 13-14.  Indeed, *Pittman* held that a transfer tax on the recording of mortgages was barred *despite* a materially identical carve-out for real property taxation.  308 U.S. 21, 32-33 & n.3 (1939).  A mortgage is an interest in the underlying real estate.  *See Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). If any tax relating to an interest in real property fell within the carve-out, then the tax in *Pittman* would have been permitted, but the Supreme Court held that it was barred — just the opposite of what Plaintiff's unsupported theory would require. *See Montgomery*, 2014 WL 279852, at *4 (discussing *Pittman*).

None of the other arguments Plaintiff proffers as support for its carve-out theory has merit.  Plaintiff asserts that the district court below incorrectly held that the carve-out applies only to *ad valorem* taxes.  App. Br. 15.  But the court held no such thing.  Rather, the court correctly held that the Transfer Tax did not fall into the scope of the carve-out.  Kay App'x 39.  Plaintiff also argues that the carve-out should not be "restricted," citing "the admonition to construe tax exemptions narrowly."  App. Br. 16.  But that chestnut does not trump the plain meaning of the Exemption Provisions' narrow carve-out, which leaves only Defendants' "real

– 26 –

property" — not their activities or transactions — "subject to" taxation.  Indeed,

Plaintiff's construction would improperly read into the Exemption Provisions a

term Congress did not enact — the carve-out does not require Defendants to pay

taxes *related to* real property, only those taxes to which real property itself is

"subject."  Finally, Plaintiff argues that Defendants are trying to "have it both

ways" in applying the Exemption Provisions.  *Id.*  This is not true; Defendants'

argument consistently and correctly focuses on the plain meaning of the statutory

provisions and the objects of the unambiguous statutory language: an exemption of

an entity from "all taxation" has a different scope than a provision that subjects

real property to taxation.  Defendants give both provisions their plain meaning.

## II.    PLAINTIFF'S CONSTITUTIONAL ARGUMENTS FAIL

On appeal, Plaintiff contends that straightforward application of the plain

language of the Exemption Provisions conflicts with the Constitution.  Plaintiff's

position blends two arguments:  (1) the Exemption Provisions insufficiently

demonstrate Congress's "clear and manifest purpose" to preempt the fundamental

state power to tax, App. Br. 19-21; and (2) Congress did not have authority under

the Commerce Clause to enact the Exemption Provisions, App. Br. 21-24.  But

Plaintiff made neither of these arguments to the district court below, and

accordingly is barred from asserting either here.  Indeed, the only constitutional

argument Plaintiff made to the district court was that the Exemption Provisions

would be unconstitutional if applied to non-federal instrumentalities — but

Plaintiff abandoned that argument on appeal.

Regardless of whether these arguments are properly before this Court, each conflicts with firmly established precedent and therefore fails.  Federal statutes are presumed constitutional, and a party challenging the constitutionality of a federal law faces a heavy burden.  *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 661-62 (2003).  Plaintiff does not carry that burden.  Indeed, *every single court* to address these arguments, including the Fourth and Seventh Circuits and 13 federal district courts, has rejected them.[12]

### A.     Plaintiff's Principal Constitutional Arguments Are Not Properly before this Court

Though one would never know it from Plaintiff's brief to this Court, in the district court Plaintiff never asserted that the Exemption Provisions could not withstand Commerce Clause scrutiny nor could survive the "clear and manifest purpose" test — not in the Complaint, and not in opposing Defendants' Motion to Dismiss.  *Compare* App. Br. 19-24 *with* Kay App'x 10-27 (complaint) *and* District Ct. Dkt. No. 25 (Plaintiff's Opposition Brief).[13]  "Generally, an argument not made

---

[12]     *See Montgomery*, 2014 WL 279852, at *8; *DeKalb*, 2013 WL 7098638, at *6-7; *Montgomery, MD*, 2013 WL 1832370, at *11-14; *Cape May*, No. 12-cv-4712, Tr. 31 (Add. 32); *Athens-Clarke*, 945 F. Supp. 2d at 1412 n.18; *Butts*, No. 9:12-cv-1912, slip op. at 14 (Add. 55); *McNulty*, 2013 WL 3147641, at *6; *Spokane*, 2013 WL 3288413, at *5-6; *Providence*, 2013 WL 3816429, at *3; *Vadnais II*, 2013 WL 3900037, at *2-3; *Randolph*, 2013 WL 3947614, at *5; *Bristol*, 2013 WL 4095021, at *6; *Rowan*, 2013 WL 5213719, at *5-6; *Montgomery, OH*, 2013 WL 5755420, at *4-5; *Spoonamore*, 2014 WL 201609, at *4-8.

[13]     Unlike the "clear and manifest purpose" and Commerce Clause arguments, Plaintiff did argue in the district court that the Exemption Provisions were unconstitutional because the Enterprises are not federal instrumentalities.  *See* Kay

*(footnote continued on next page)*

– 28 –

in the lower tribunal is deemed forfeited and will not be entertained absent exceptional circumstances." *Flynn v. C.I.R.*, 269 F.3d 1064, 1068-69 (D.C. Cir. 2001) (citation omitted); *see also Gard v. U.S. Dep't of Educ.*, No. 11-5020, 2011 WL 2148585 (D.C. Cir. May 25, 2011) (argument not raised in district court was forfeited).

Plaintiff has made no attempt to excuse its forfeiture, nor can it. There has been no intervening change in law, nor any uncertainty; Plaintiff's arguments have been rejected in every single one of those courts where they were raised. *See supra* n.12. And Plaintiff can point to "no compelling reason why [it] could not have raised this issue in the district court." *Jones v. Horne*, 634 F.3d 588, 603 (D.C. Cir. 2011). Though "courts of appeals have discretion to address issues raised for the first time on appeal," this discretion is exercised "only in exceptional circumstances." *Flynn*, 269 F.3d at 1069. None are present here, and Plaintiff's attempt to press new arguments for the first time on appeal should be rejected. In any event, the arguments lack substantive merit and fail on their own terms.

---

*(footnote continued from previous page)*

App'x 39 n.5; District Ct. Dkt. No. 25, 13 n.7 (Plaintiff's Opposition Brief). The district court correctly rejected this argument, Kay App'x 39 n.5, and Plaintiff has abandoned it on appeal. *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) ("Ordinarily, arguments that parties do not make on appeal are deemed to have been waived."). Indeed, Plaintiff now readily admits that instrumentality status is only required for an entity to enjoy constitutional immunity, not to take advantage of a congressionally enacted statutory exemption. *See* App. Br. 6, 16-18. Despite having abandoned the argument, Plaintiff attempts to distinguish the Supreme Court's decision in *Pittman* because that case involved a federal instrumentality. *See* App. Br. 12. The distinction fails.

– 29 –

**B.      Under the Supremacy Clause, the Exemption Provisions Supersede State Tax Power**

Plaintiff correctly acknowledges — in a footnote — that "[c]ertainly federal power trumps state power — even the power to tax." App. Br. 20 n.7.  Yet Plaintiff's brief is replete with rhetoric suggesting that federalist principles somehow make Congress's power to preempt state taxation constitutionally suspect.  *See, e.g.*, *id*. at 7-8.  Accordingly, it is important to note the longstanding and oft-recited principles of constitutional law confirming that federal statutes superseding state tax power, such as the Exemption Provisions, are entirely proper. As the Supreme Court recently reiterated:

> The Supremacy Clause provides that the laws … of the United States "shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., Art. VI., cl.2. Accordingly, it has long been settled that state laws that conflict with federal law are "without effect."

*Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2472-73 (2013) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981), *McCulloch v. Maryland*, 4 U.S. (4 Wheat.) 316, 427 (1819)).  The Supremacy Clause sets forth no different standard for legislation enacted under the Commerce Clause, and includes no special carve-out for state tax laws.  As the Seventh Circuit explained, "[n]o provision of the Constitution insulates state taxes from federal powers granted by the Constitution." *DeKalb*, 2013 WL 7098638, at *6.

Indeed, a Supreme Court decision issued less than 40 years after the Constitution was adopted established that the federal commerce power supersedes

state tax authority, and the Court has not wavered since. *See Brown v. Maryland*, 25 U.S. (12 Wheat.) 419 (1827). In *Brown*, the Supreme Court analyzed whether a state tax was "repugnant" to the Commerce Clause, explaining that the federal commerce power is "complete in itself" and acknowledges "no limitations other than are prescribed by the constitution." *Id.* at 445-46 (citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824)). The taxing state, Maryland, argued that "this construction of the power to regulate commerce … would abridge the acknowledged power of a State to tax its own citizens, or their property within its territory." *Id*. at 448. Writing for the Court, Chief Justice John Marshall acknowledged the states' power to tax "to be sacred; but cannot admit that it may be used so as to obstruct the free course of a power given to Congress." *Id.* The opinion emphatically rejected Maryland's argument, finding that

> [T]he powers remaining with the States may be so exercised as to come in conflict with those vested in Congress. *When this happens, that which is not supreme must yield to that which is supreme.… [T]he taxing power of the States must have some limits. It cannot reach and restrain the action of the national government within its proper sphere … or restrain the operation of any law which Congress may constitutionally pass. It cannot interfere with any regulation of commerce.*

*Id.* at 448-49 (emphasis added);[14] *see also State Bd. of Ins. v. Todd Shipyards Corp.*, 370 U.S. 451, 456 (1962) (holding an insurance company exempt from a

---

[14]     To be sure, the Supreme Court's views of what the *dormant* Commerce Clause permits and precludes — and *Brown*'s implications for that doctrine — have waxed and waned over the intervening decades. *See Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179-83 (1995). But that does not affect the

*(footnote continued on next page)*

state tax under a federal statute because "[t]he power of Congress to grant

protection to interstate commerce against state regulation or taxation or to withhold

it is so complete that its ideas of policy should prevail") (internal citations

omitted).  Modern Supreme Court decisions confirm that under the Supremacy

Clause, federal statutes properly enacted under the Commerce Clause or any other

enumerated power supersede state tax law.  *See, e.g.*, *Exxon Corp. v. Hunt*, 475

U.S. 355, 372, 376 (1986) (CERCLA negated New Jersey's power to impose

certain taxes); *Aloha Airlines, Inc. v. Dir. of Taxation of Haw.*, 464 U.S. 7 (1983)

(federal statute precluded a state from imposing a tax on the gross income of

airlines operating in the state).[15]

These cases are further supported by the Supreme Court's repeated

statements that it is Congress's prerogative to determine the extent, if any, to which

---

*(footnote continued from previous page)*

vitality of the Court's conclusion that however "sacred" state tax power may be, it
nevertheless is subordinate to the federal commerce power.

[15]      Indeed, in *Garcia v. San Antonio Metropolitan Transit Authority*, the
Supreme Court explained that it "doubt[ed] that courts ultimately can identify
principled constitutional limitations on the scope of Congress' Commerce Clause
powers over the States merely by relying on *a priori* definitions of state
sovereignty."  469 U.S. 528, 548 (1985).  The Court concluded that it had "no
license to employ freestanding conceptions of state sovereignty when measuring
congressional authority under the Commerce Clause" and that "the Constitution
does not carve out express elements of state sovereignty that Congress may not
employ its delegated powers to displace."  *Id.* at 550.  Therefore, "[s]tates must
find their protection from congressional regulation through the national political
process, not through judicially defined spheres of unregulable state activity."
*South Carolina v. Baker*, 485 U.S. 505, 512 (1988) (citing *Garcia*, 469 U.S. at
537-44).

particular private entities are to be exempted from state and local taxation.  In *United States v. New Mexico*, the Supreme Court first noted the sensitivity of "determining the allocation of power between coexisting sovereignties" and then — in the very next paragraph — explained that "[i]f the immunity of federal contractors is to be expanded beyond its narrow constitutional limits, it is Congress that must take responsibility for the decision, by so expressly providing."  455 U.S. 720, 737 (1988).  Surely the Supreme Court intended that Congress could do so within whatever limits the federalist structure of the Constitution places upon it. *See also*, *e.g.*, *Ariz. Dep't of Revenue v. Blaze Constr. Co.*, 526 U.S. 32, 38 (1999) (the decision "[w]hether to exempt [a government contractor] from Arizona's transaction privilege tax … rests … with Congress"); *City of Detroit*, 355 U.S. at 474-75 (Constitution does not immunize government's private lessee from excise tax, but "this is not to say that Congress … cannot confer immunity by statute"); *Okla. Tax Comm'n v. Texas Co.*, 336 U.S. 342, 365 (1949) (similar).  If Congress lacked constitutional power to preempt the application of state tax laws to private entities, as Plaintiff erroneously suggests, these repeated entreaties would be pointless. *See Montgomery*, 2014 WL 279852, at *5; *Rowan*, 2013 WL 5213719, at *6.

      This power is particularly clear where, as here, Congress created the exempt entity to pursue a mission Congress deemed important.  *See Carson v. Roane-Anderson Co.*, 342 U.S. 232, 234 (1952) (Congress validly provided immunity for Atomic Energy Commission's contractors; the "power of Congress to create tax immunities … stems from the power to preserve and protect" entities Congress has

"validly authorized."); *First Agric. Nat'l Bank v. Tax Comm'n*, 392 U.S. 339
(1968) (interpreting statute exempting private, federally-chartered national banks
from certain forms of state taxation).  The fact that Congress had unquestioned
power to create and to privatize the Enterprises to facilitate their statutory missions
indicates that the Necessary and Proper Clause (in addition to the Commerce
Clause) supports the Exemption Provisions.  *See Montgomery*, 2014 WL 279852,
at *6; *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 271 (1964)
(Black, J., concurring) ("[I]t has long been held that the Necessary and Proper
Clause … adds to the commerce power of Congress the power to regulate local
instrumentalities operating within a single State if their activities burden the flow
of commerce among the States."); *Carson*, 342 U.S. at 234 (similar).

　　　To be sure, the Supreme Court has great respect for the states' role in the
federal system, and therefore presumes that Congress generally does not intend
federal statutes to preempt state tax powers or other powers central to state
sovereignty.  *See*, *e.g.*, *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332
(1994).  That presumption likely does not apply here,[16] but even if it did, the
Exemption Provisions would easily overcome it.  In *ACF Industries*, the Supreme
Court considered whether a federal statute that "set[] limits upon *the taxation*

---

[16]　　The presumption against preemption is "not triggered when the State
regulates in an area where there has been a history of significant federal presence."
*United States v. Locke*, 529 U.S. 89, 108 (2000).  Here, the Enterprises were
created by federal statute and every aspect of their operations is subject to
pervasive federal regulation.  *Cf. Barnett Bank of Marion Cnty., N.A. v. Nelson*,
517 U.S. 25, 32 (1996) (holding state statute preempted as to national banks).

*authority* of state government, an authority we have recognized as *central to state sovereignty*[,]" superseded state tax law. *Id*. at 345 (emphases added). Applying the presumption against preemptive intent, the Court explained that federal statutes will be "interpret[ed] to pre-empt the traditional state powers only if that result is the *clear and manifest purpose* of Congress." *Id*. (internal quotation marks and citation omitted; emphasis added). The Court acknowledged that federal statutes precluding state taxes "in no uncertain terms" would preempt state tax laws. *Id.* at 343. Accordingly, federal statutes supersede state tax law, notwithstanding the substantial federalism interests at stake, if that is the "clear and manifest purpose" of Congress.

Although the federal statute at issue in *ACF Industries* did *not* evince the "clear and manifest purpose" of preempting the particular state-law provision at issue, 510 U.S. at 345, the Supreme Court often has found federal statutes sufficiently "clear and manifest" in their purpose to supersede other fundamental state powers, such as the police power. *See*, *e.g.*, *Arizona v. United States*, 132 S. Ct. 2492, 2501-03 (2012); *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008); *Ray v. Atl. Richfield Co.*, 435 U.S. 151, 157-58 (1978); *Jones v. Rath Packing Co.*, 430 U.S. 519, 528-32 (1977); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230-35 (1947). And the Supreme Court has applied the same federal statute in *ACF Industries* to preempt state tax provisions within its scope. *See CSX Transp., Inc. v. Ga. State Bd. of Equalization*, 552 U.S. 9 (2007).

Here, the Exemption Provisions preclude state taxation "in no uncertain terms," thereby embodying the "clear and manifest purpose" to "pre-empt the

– 35 –

taxation authority of state government." *See ACF Indus.*, 510 U.S. at 343, 345.
The statutes expressly exempt Defendants from "all taxation now [or] hereafter
imposed by any State." 12 U.S.C. §§ 1723a(c)(2), 1452(e), 4617(j)(2). This
unambiguous language leaves no room for any doubt that Congress intended to
displace state tax laws; that is the only conceivable purpose and effect of the
provision. *See Montgomery*, 2014 WL 279852, at *5 ("Congress's intent to
exempt [the Enterprises] from state taxation in the present case could not be
clearer."); *DeKalb*, 2013 WL 7098638, at *6 ("The scope of the [Exemption
Provision] could not be clearer.")

     Plaintiff contends that its arguments concerning the statutory interpretation
of both the chief clause of the Exemption Provisions and its carve-out, discussed
*supra* 21-27, demonstrate that the Exemption Provisions "do not evince a 'clear
and manifest purpose' to preempt state power." App. Br. 21. Plaintiff cannot
create ambiguity, or otherwise impugn the clarity of Congress's manifest intent to
protect the Enterprises from materially "all [state and local] taxation," by raising a
statutory argument that has been roundly rejected by the Fourth, Sixth, and
Seventh Circuits and nearly thirty district court opinions. *See supra* nn. 4, 10.
These courts have time and again emphasized that the *only* plausible interpretation
of the plain language of the Exemption Provisions applies to transfer taxes
substantially identical to the one at issue here. *See, e.g.*, *Montgomery*, 2014 WL
279852, at *5; *DeKalb*, 2013 WL 7098638, at *6; *Oakland*, 716 F.3d at 940;
*Spokane*, 2013 WL 3288413, at *3, *6; *Delaware*, 2013 WL 1234221, at*5, *6;
*Bristol*, 2013 WL 4095021, at *4.

– 36 –

Plaintiff's bare assertion that the Exemption Provisions "do not clearly exempt the entities from local taxes," App. Br. 21, cannot be squared with the language of the Exemption Provisions themselves, that Defendants "*shall be exempt from all taxation now or hereafter imposed by any* State [or local government]."  12 U.S.C. §§ 1723a(c)(2), 1452(e); 4617(j)(2).  And though, as Plaintiff contends, the carve-out "appears on [its] face to permit local taxes on real estate," App. Br. 21, this does not detract from the Exemption Provisions' clear and manifest purpose of exempting Defendants from all other forms of state and local taxes that are not imposed on real estate, including the Transfer Tax.  *See supra* 22.  As the Fourth Circuit concluded, "every legal and common understanding" confirms that the carve-out "undoubtedly" does not allow transfer taxes.  *Montgomery*, 2014 WL 279852, at *3-4.

*Piccadilly Cafeterias*, which Plaintiff cites, actually supports Defendants. *See* App. Br. at 4.  There, the Supreme Court adopted "the most natural reading of the text" of a Bankruptcy Code provision exempting from state transfer taxes any asset transfer "under a plan confirmed" pursuant to Chapter 11 to hold that the provision covered only post-approval transfers.  *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 35, 51, 52 (2008).  The decision plainly affirms the preemptive effect of a federal statute read "most natural[ly]" to supersede certain state taxes.  This Court should do the same here.  The "most natural reading" — indeed, the only plausible reading — of Defendants' statutory exemptions from "all [state and local] taxation," with a carve-out permitting only those taxes to which "real property [is] subject," is one that acknowledges

– 37 –

Congress's clear and manifest purpose to exempt Defendants from all taxation except that imposed on their real property.

### C. Congress Properly Exercised Its Commerce Clause Power in Enacting the Exemption Provisions

Plaintiff contends that Congress regulated "local intrastate taxes" when it enacted the Exemption Provisions. App. Br. 21. From there, Plaintiff asserts that the payment of the Transfer Tax has no substantial effect on interstate commerce and thus falls outside the scope of the Commerce Clause. App. Br. 21-24. Plaintiff proceeds from an incorrect premise. The relevant activity is the conduct Congress sought to regulate — here, the Enterprises' secondary-mortgage-market conduct — not any preempted state activity or authority.

The Seventh Circuit rejected Plaintiff's incorrect contention, holding that "the constitutional basis for the statute is the [C]ommerce [C]lause, and it is obvious that the home mortgage market is nationwide." *DeKalb*, 2013 WL 7098638, at *6. The Fourth Circuit, in dismissing these same arguments, concluded that "the ultimate goals of the [Enterprises' statutory charters] are to stabilize the secondary mortgage market and to promote liquidity in that market, which are quintessentially interstate and economic aims." *Montgomery*, 2014 WL 279852, at *7. Therefore, "the statutory exemptions are valid exercises of Congress's constitutional powers." *Id.* at *7.

Other cases analyzing similar federal exemption provisions under the Commerce Clause confirm that the activity relevant to the Commerce Clause analysis is the activity of the exempt entity facilitated by the tax exemption, not the

– 38 –

activity of the state in levying taxes.  In *Deer Park Independent School District v. Harris County Appraisal District*, for example, plaintiffs challenged the constitutionality of a federal statute that exempted businesses located inside a Foreign Trade Zone ("FTZ") from state and local property taxes.  132 F.3d 1095, 1097 (5th Cir. 1998).  In finding the statute to be a valid exercise of Congress's Commerce Clause power, the Fifth Circuit did not evaluate the intra- or interstate nature of the imposition or payment of state and local property taxes, as Plaintiff urges this Court to do here.  Rather, the court confirmed that the businesses' "activities in the FTZs constitute … interstate commerce," and that "it is completely rational to believe that the imposition of ad valorem taxes on the property in the FTZs would affect interstate … commerce, and that forbidding such taxes would provide uniform treatment of FTZs throughout the country."  *Id.* at 1098; *see also SEPTA v. Pa. Pub. Util. Comm'n*, 826 F. Supp. 1506, 1517 (E.D. Pa. 1993) (analyzing the effect state and local taxes would have on the overall interstate operations of rail companies, instead of the intrastate nature of the taxes themselves, in upholding federal tax exemption statutes as constitutional under the Commerce Clause).[17]

---

[17]     Likewise, in *NCAA v. Governor of New Jersey*, 730 F.3d 208 (3d Cir. 2013), the Third Circuit held that a statute prohibiting states from licensing gambling on sporting events was a valid exercise of Congress's Commerce Clause authority.  In upholding the statute, the court did not focus on the preempted state regulation, but rather on the fact that the *private activity* regulated by the law — the "placing [of] wagers on sporting events" —"substantially affects interstate commerce."  *Id.* at 225.

Here, even a cursory review of the statutes at issue — the federal statutory charters that created the Enterprises and provided them with statutory tax exemptions — shows that Congress was regulating the nationwide secondary mortgage market, not state taxation.  *See* 12 U.S.C. §§ 1716, 1451 note; *see also Montgomery*, 2014 WL 279852, at \*7; *Montgomery, OH*, 2013 WL 5755420, at \*5 ("The Congressional legislation under review, however, is not aimed at state property transfer taxes, but at facilitating the secondary mortgage market."); *Spoonamore*, 2014 WL 201609, at \*5 (similar).  The secondary mortgage market inherently involves interstate commercial activity.  *See*, *e.g.*, *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 238 (1980) (describing "the interstate secondary mortgage market, in which existing mortgages were sold to raise new capital for future loans"); *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1143 (9th Cir. 2003) ("[t]he effects of home sales on the interstate mortgage market are a sufficient connection with interstate commerce"); *Montgomery*, 2014 WL 279852, at \*7; *DeKalb*, 2013 WL 7098638, at \*6; *Montgomery, OH*, 2013 WL 5755420, at \*5; *Spoonamore*, 2014 WL 201609, at \*5.  Indeed, Plaintiff admits as much.  *See* App. Br. 23.  Thus, no one could plausibly suggest that the activity Congress regulated in creating the Enterprises lacks "substantial effect" on interstate commerce.

As the activity regulated by the Enterprises' federal statutory charters is the development of an interstate secondary mortgage market, the fact that this interstate commercial activity involves individual intrastate component activities, including the transfer of individual properties, makes no difference to the analysis.

It is always possible to identify purportedly local elements of interstate commercial activity — that does not negate the interstate character of the activity as a whole, nor does it place the purportedly local elements outside the scope of the Commerce Clause. *See United States v. Morrison*, 529 U.S. 598, 609 (2000). For example, in *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, the Supreme Court confirmed that even "a tax on real estate, like any other tax, may impermissibly burden interstate commerce" and invalidated a state property-tax provision. 520 U.S. 564, 574 (1997);[18] *see also Heart of Atlanta*, 379 U.S. at 258 (Congress may exert control over activities that are "purely local in character," for "if it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze"). Similarly, the activity taxed in *SEPTA* — the use of bridges in Pennsylvania — was every bit as "local" as a transfer of property in a given state, yet the state tax burden on this local activity was rationally deemed to have an effect on interstate commerce. 826 F. Supp. at 1511 n.1, 1516-22. Another court held that a federal statute exempting a private, for-profit entity from state taxation precluded the entity from being liable for a state property tax. *New Jersey v. Consol. Rail Corp.*, 690 F. Supp. 1061, 1065-66 (Sp. Ct. R.R.R.A. 1988)

---

[18]    In *Camps Newfound/Owatonna*, the Supreme Court confirmed that state tax power is subordinate to federal Commerce Clause power — even its "dormant" or "negative" power. 520 U.S. at 574. In holding that the *dormant* Commerce Clause negated a state property-tax provision, the Court applied the *affirmative* Commerce Clause jurisprudence of *Heart of Atlanta* and *United States v. Lopez*, 514 U.S. 549 (1995), thereby confirming that the *entirety* of the Commerce Clause trumps state tax power. 520 U.S. at 574-75.

(three-judge district court panel) ("*Conrail*").  Here, as the Fourth Circuit concluded, "Congress could rationally have believed that state taxation would substantially interfere with or obstruct the [Enterprises' statutory] purposes" and "insulating Fannie Mae and Freddie Mac from most state taxation would substantially further those entities' purposes." *Montgomery*, 2014 WL 279852, at *7.

   *Wickard v. Filburn*, 317 U.S. 111 (1942), and *Gonzalez v. Raich*, 545 U.S. 1 (2005), upon which Plaintiff relies, App. Br. 22-23, do not lead to a contrary conclusion — indeed, they support Defendants.  The federal statutes analyzed in *Wickard* and *Raich* sought to regulate interstate markets for wheat and marijuana, respectively, though at least one component of those regulations touched upon intrastate activities.  As here, the fact that those federal statutes affected intrastate activity did not defeat their constitutionality under the Commerce Clause.  *See Montgomery*, 2014 WL 279852, at *6-7.

   Plaintiff also cites *Lopez* and *Morrison*, App. Br. 19, 22, but these cases do not further Plaintiff's arguments.  *See Montgomery*, 2014 WL 279852, at *7.  In *Lopez*, the Court held that a federal statute regulating firearm possession "by its terms ha[d] nothing to do with 'commerce'" and therefore cannot be found to regulate activity "which viewed in the aggregate, substantially affects interstate commerce." *Lopez*, 514 U.S. at 561.  In *Morrison*, the Court held that a civil remedial provision of the Violence Against Women Act, which "contain[ed] no jurisdictional element establishing that the federal cause of action [was] in pursuance of Congress' power to regulate interstate commerce," did not survive

– 42 –

Commerce Clause scrutiny. 529 U.S. at 613. Those cases turned on whether the activity Congress sought to regulate was economic in nature, such that it potentially could have a substantial nexus with interstate commerce. *See id.* at 610 ("[A] fair reading of *Lopez* shows that the noneconomic, criminal nature of the conduct at issue was central to [the Court's] decision in that case."); *id.* at 613 (noting that "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity," and that "thus far in our Nation's history [the Court's] cases have upheld Commerce Clause regulation of intrastate activity only where the activity is economic in nature"). Here, the Enterprises are inextricably connected to interstate commerce; their congressionally enacted *raison d'être* is to facilitate the nationwide secondary mortgage market. *See*, *e.g.*, 12 U.S.C. §§ 1716, 1451, 1451 note.

Considering the clear application of this case law to the Exemption Provisions, it is unsurprising that every court to have been presented with this constitutional challenge, including the Fourth and Seventh Circuits, has held the Exemption Provisions to be a valid exercise of Congress's power under the Commerce Clause. *See Montgomery*, 2014 WL 279852, at *6-8; *DeKalb*, 2013 WL 7098638, at *6; *Montgomery, MD*, 2013 WL 1832370, at *11-14; *Athens-Clarke*, 945 F. Supp. 2d at 1412 & n.18; *Butts*, No. 9:12-cv-1912, slip op. at 15 (Add. 56); *Spokane*, 2013 WL 3288413, at *5; *Providence*, 2013 WL 3816429, at *3; *Vadnais II*, 2013 WL 3900037, at *1; *Randolph*, 2013 WL 3947614, at *5; *Bristol*, 2013 WL 4095021, at *6; *Rowan*, 2013 WL 5213719, at *6; *Montgomery,*

– 43 –

*OH*, 2013 WL 5755420, at *5; *Spoonamore*, 2014 WL 201609, at *4-8.  This
Court should reach the same conclusion.

Plaintiff fails to address this tide of opinions rejecting its constitutional
challenge, instead claiming without basis that the Exemption Provisions, as
properly interpreted, would "expand the scope of the Commerce Clause beyond
current limits" and create a "boundless supply of Congressional power."  App Br.
19.  That is wrong.  Supreme Court precedent establishes outer limits on
Congress's Commerce Clause power along two dimensions.  *See Montgomery*,
2014 WL 279852, at *5; *Montgomery, OH*, 2013 WL 5755420, at *5 (same).
*First*, Congress must legislate on a subject with substantial relationship to
interstate commerce.  *See*, *e.g.*, *Lopez*, 514 U.S. at 558-59; *Morrison*, 529 U.S. at
608-09.  This requires that the legislation address "'commerce' or [some] sort of
economic enterprise."  *Lopez*, 514 U.S. at 561; *see also Morrison*, 529 U.S. at 610
(emphasizing "the role that the economic nature of the regulated activity plays in
[the] Commerce Clause analysis").  *Second*, once it is established that legislation
addresses a proper interstate commercial subject, "the only remaining question for
judicial inquiry is whether the means chosen by Congress [are] reasonably adapted
to [their] end."  *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S.
264, 276 (1981) (internal quotation marks, brackets, and citations omitted); *see
Montgomery, OH*, 2013 WL 5755420, at *5; *Montgomery*, 2014 WL 279852, at
*5.  "The judicial task is at an end once the court determines that Congress acted
rationally."  *Montgomery, OH*, 2013 WL 5755420, at *5 (quoting *Hodel*, 452 U.S.
at 276).

– 44 –

Here, as described above, the subject on which Congress legislated is the secondary mortgage market, which has an obvious and substantial connection to interstate commerce. There also is no question that exempting the Enterprises from state and local taxation is reasonably adapted to the end Congress sought to achieve — more equitable and efficient allocation of mortgage credit throughout the nation. *See* 12 U.S.C. § 1716, 4501; *Montgomery*, 2014 WL 279852, at *7. Reducing the costs faced by the primary market participants, and ensuring that they are not subject to substantial variation in tax costs across states, are facially rational means of achieving that legislative end. *See Montgomery*, 2014 WL 279852, at *7 (describing ways in which state taxation would interfere with the Enterprises' federal statutory missions). Plaintiff's fear that Congress might "preempt any state tax on any private entity as long as that private entity operated within any market impacting interstate commerce," App. Br. 23, ignores the meaningful limit of rational basis review on the Commerce Clause power.

Contrary to Plaintiff's contention that affirming the constitutionality of the Exemption Provisions would leave Congress "boundless" power under the Commerce Clause as it relates to state taxation, hypothetical federal statutes that plainly would fall outside the limits noted above can easily be envisioned. For example, a federal statute purporting to exempt from state taxation all individuals who have been married to the same person for ten years or more would not pass muster — marriage is a family-law matter reserved to the states, not commerce subject to federal regulation. By the same token, under *Morrison* it is clear that a federal statute purporting to exempt victims of gender-based violence from state

– 45 –

taxation also would be unsustainable under the Commerce Clause — the Supreme Court found that while gender-based violence is contemptible, it is not commerce. Even where statutes address proper commercial subjects, the reasonable-means test establishes another outer limit. For example, a statute addressing commercial aviation could not be affirmed if, in the purported interest of encouraging air travel, it exempted from state taxation all manufacturers of toy airplanes or all people named Wilbur, Orville, or Amelia. There would be *no* relationship, let alone a *sufficiently rational* relationship, between the end and the means.

Furthermore, although not limited to Commerce Clause legislation, the "clear and manifest purpose" standard discussed *supra* "provides another 'outer limit' on Congress's ability to supersede state tax laws — Congress must clearly state its intent to do so." *Montgomery, OH*, 2013 WL 5755420, at *5; *Montgomery*, 2014 WL 279852, at *5. Accordingly, a statute that directed federal agencies to procure office supplies "at the lowest possible cost," but that was silent as to any intended effect on state taxation, would not exempt vendors from state taxation.

Finally, the political process provides an additional constraint on Congress's exercise of its Commerce Clause power. Indeed, the Supreme Court has acknowledged that, although courts have "no license to employ freestanding conceptions of state sovereignty when measuring congressional authority under the Commerce Clause," states are not left without recourse to protect those concerns. *Garcia*, 469 U.S. at 550. "States must find their protection from congressional regulation through the national political process, not through judicially defined

spheres of unregulable state activity." *Baker*, 485 U.S. at 512 (citing *Garcia*, 469 U.S. at 537-54); *see also DeKalb*, 2013 WL 7098638, at *4 ("[H]ad states wanted to be permitted to tax property sales by [the Enterprises], why wouldn't Congress have included an express exception [in the Exemption Provision]?").

The federal government unquestionably is one of limited powers, and its Commerce Clause power surely has outer limits. The Exemption Provisions fall well within them; Plaintiff's Commerce Clause challenge therefore fails.

### D.    The Enterprises Are Federal Instrumentalities for Purposes of Constitutional Immunity from State Taxation

It is unnecessary for this Court to decide whether the Enterprises are constitutionally immune from the Transfer Tax. As a procedural matter, though Plaintiff did argue in the district court that the Exemption Provisions were unconstitutional because the Enterprises are not federal instrumentalities, the district court correctly rejected this argument, and Plaintiff has abandoned it on appeal. *See supra* n.28.

As to the substance, the Supreme Court has held that it is "unnecessary" to determine an entity's federal instrumentality status if they already enjoy a statutory exemption from state taxation. *See First Agric.*, 392 U.S. at 341. Indeed, Plaintiff now readily admits that instrumentality status is only required for an entity to enjoy constitutional immunity, not to take advantage of a congressionally enacted statutory exemption. *See* App. Br. 6, 16-18.[19] Because the Enterprises' statutory

---

[19]    Despite this concession, Plaintiff contends that the Supreme Court's decision in *Pittman* should be distinguished as a case involving constitutional, and not

*(footnote continued on next page)*

exemptions are valid and applicable, there is no need for the Court to determine whether the Enterprises are also constitutionally immune from the Transfer Tax as federal instrumentalities.

Nevertheless, the Enterprises do benefit from implied constitutional immunity because they are federal instrumentalities for tax-immunity purposes.[20] The relevant case law establishes that there is a multi-factor test for determining an entity's federal-instrumentality status.  *See, e.g.*, *Dep't of Emp't v. United States*, 385 U.S. 355, 359 (1966); *Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 528 (6th Cir. 2012); *United States v. Michigan*, 851 F.2d 803, 806 (6th Cir. 1988).  In *Michigan* — a case decided years *after* the *New Mexico* decision upon which Plaintiff relies — the Sixth Circuit indicated that, where a corporation is chartered by the federal government, charged with a federally important mission, and subjected to continuing federal supervision as it pursues that mission, the corporation is properly deemed a federal instrumentality for purposes of state-tax immunity.  851 F.2d at 806-07.

---

*(footnote continued from previous page)*

statutory immunity.  App. Br. 12.  Plaintiff misreads *Pittman*, where the Court "construe[d] [a statutory] provision as embracing and prohibiting the tax in question."  308 U.S. at 33.  Moreover, as *First Agricultural* would later confirm, it was "unnecessary" for the Supreme Court to consider the instrumentality status of the Home Owners' Loan Corporation in *Pittman* in light of its clear statutory exemption.  392 U.S. at 341.

[20]     As to the Conservator, courts have held that FDIC receivers, which operate under a substantially similar statutory framework, are federal instrumentalities for purposes of state taxation.  *See*, *e.g.*, *Simon v. Cebrick*, 53 F.3d 17, 22-23 (3d Cir. 1995).

The Enterprises, created by Congress with federal statutory charters, continue to carry out important functions pursuant to their congressional mandate, and continue to be extensively regulated by the federal government. *See DeKalb*, 2013 WL 7098638, at *7 (noting the Enterprises' national mission and the fact that it was unchanged after privatization); *Montgomery*, 2014 WL 279852, at *1-2 (same). In 1992, at a time when the Enterprises had operated as private entities for decades, as they continue to do now, Congress found that the Enterprises still carried out "important public missions." 12 U.S.C. § 4501 (enacted Oct. 28, 1992). Congress went on to find that "the continued ability of the [Enterprises] to accomplish their public missions is important to providing housing in the United States," and that the Enterprises "have an affirmative obligation to facilitate the financing of affordable housing for low- and moderate-income families in a manner consistent with their overall public purposes." *Id.* The Enterprises also continue to be "extensively regulated by the federal government." *Liberty Mortg. Banking, Ltd. v. Fed. Home Loan Mortg. Corp.*, 822 F. Supp. 956, 959 (E.D.N.Y. 1993). Thus, pursuant to the multi-factor test outlined in cases such as *Michigan*, the Enterprises qualify as federal instrumentalities.

Plaintiff argues that Fannie Mae's privatization and Freddie Mac's incorporation as a private entity is determinative of this analysis. App. Br. 17-18 & n.6. Plaintiff's singular focus on the Enterprises' status as private entities ignores the law described above. Contrary to Plaintiff's implication, *New Mexico* does not state that private status is anathema to federal-instrumentality status. Rather, the Supreme Court held that constitutional "tax immunity is appropriate in

– 49 –

only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, *at least insofar as the activity being taxed is concerned*." *New Mexico*, 455 U.S. at 735 (emphasis added). The key second part of this sentence, in addition to the holdings of the cases that have applied *New Mexico*, reveals that almost any entity can be a federal instrumentality for tax immunity purposes under appropriate circumstances, such as those presented here.[21]

Indeed, the Seventh Circuit rejected Plaintiff's reasoning in *DeKalb*, stating that if the Enterprises were "federal instrumentalit[ies] before [their] privatization, as clearly [they] w[ere] … [they are] federal instrumentalit[ies] now." *DeKalb*, 2013 WL 7098638, at *7 (internal quotation marks omitted). To find otherwise would be to "make federal government less flexible by insisting on a rigid distinction between types of federal instrumentality," removing from the federal government's toolbox the ability to harness private funding through privatization of a federal instrumentality for a national purpose. *Id.* The Ninth Circuit similarly rejected Plaintiff's argument in *Rust v. Johnson*, 597 F.2d 174 (9th Cir. 1975), stating that it had "been unable to find anything in [the 1968 legislation] which supports the conclusion that Congress intended to strip [Fannie Mae] of its status as a federal instrumentality." *Id.* at 178. Moreover, at the same time that Congress

---

[21]     The language upon which Plaintiff relies in *State of Nevada ex rel. Hager v. Countrywide Home Loans Servicing*, 812 F. Supp. 2d 1211, 1217 (D. Nev. 2011), *see* App. Br. 17-18, is dicta.

– 50 –

amended the Enterprises' statutes to eliminate certain privileges, including their exemption from federal taxation, it retained their exemption from "all [state and local] taxation."[22]

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment below.

---

[22] Plaintiff cites a case in which Freddie Mac argued (and the court found) that it was not a government actor *for due process purposes*. App. Br. 18 (discussing *Liberty Mortg.*, 822 F. Supp. 956). This case does not apply the very different standard that governs whether entities are *federal instrumentalities for taxation purposes*. *See Hall v. Am. Nat'l Red Cross*, 86 F.3d 919, 922 (9th Cir. 1996) ("Government-created corporations are often held to be tax-immune government instrumentalities, but courts have also frequently found them not to be subject to constitutional treatment as government actors.").

Dated:  February 3, 2014          Respectfully submitted,


                                   /s/ Michael A.F. Johnson
                                  Howard N. Cayne
                                  Michael A.F. Johnson
                                  Asim Varma
                                  Dirk C. Phillips
                                  ARNOLD & PORTER LLP
                                  555 Twelfth Street, NW
                                  Washington, DC  20004
                                  (202) 942-5000
                                  (202) 942-5999 (fax)
                                  Howard.Cayne@aporter.com
                                  Michael.Johnson@aporter.com
                                  Asim.Varma@aporter.com
                                  Dirk.Phillips@aporter.com

                                  *Counsel for Appellee FHFA*


                                   /s/ Michael D. Leffel
                                  Michael D. Leffel
                                  FOLEY & LARDNER LLP
                                  150 East Gilman Street
                                  Suite 5000
                                  Madison, WI  53703
                                  (608) 258-4216
                                  mleffel@foley.com

                                  Jill L. Nicholson
                                  FOLEY & LARDNER LLP
                                  321 North Clark Street,
                                  Suite 2800
                                  Chicago, IL  60654
                                  (312) 832-4500
                                  jnicholson@foley.com

                                  *Counsel for Appellee*
                                  *Federal National Mortgage Association*

– 52 –

  /s/ Michael J. Ciatti
Michael J. Ciatti
Merritt E. McAlister
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 737-0500
mciatti@kslaw.com
mmcalister@kslaw.com

*Counsel for Appellee*
*Federal Home Loan Mortgage Corp.*

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATION, TYPEFACE**
**REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify as follows:

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 13,960 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii);

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007, in 14-point Times New Roman font.

Dated: February 3, 2014          _ /s/ Michael A.F. Johnson_____
                                                      Michael A.F. Johnson

                                                      *Counsel for Appellee FHFA*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2014, I electronically filed the foregoing document with the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

   /s/ Michael A.F. Johnson
Michael A.F. Johnson

*Counsel for Appellee FHFA*